## WICKER *v.* HOPPOCK.

1. The rules about judicial sales which make void as against public policy agreements that persons competent to bid at them will not bid, forbid such agreements alone as are meant to prevent competition and induce a sacrifice of the property sold. An agreement to bid, the object of it being fair, is not void.

2. On a breach of a contract to pay, as distinguished from a contract to indemnify, the amount which would have been received if the contract had been kept, is the measure of damages if the contract is broken.

ERROR to the Circuit Court for Northern Illinois.

Caldwell being owner of a distillery, subject to a mortgage to Hoppock, leased it to Chapin & Co. for three years; it being agreed by the lease itself that the rent, so much a year, should be paid by Chapin & Co. directly to Caldwell the mortgagee, so as to keep down in part the interest on the mortgage. Chapin & Co., after being for about eighteen months in occupation of the distillery, and accumulating at it a considerable amount of personal chattels, such as are commonly used about such a place, assigned the lease to one Wicker under some sort of partnership arrangement, and Wicker went in. The rent not having been paid, according to his agreement, by Chapin & Co. to Hoppock, the mortgagee, Hoppock applied now to Wicker to pay it, giving him to understand that unless he did pay it, suit of foreclosure would have to be brought on the mortgage, and he dispossessed. After some negotiations, Wicker, who it seemed was desirous of becoming owner of the personal chattels which Chapin & Co. had left at the distillery, agreed with Hoppock that if he, Hoppock, would sue Chapin & Co. for the amount of rent in arrear and obtain judgment and levy on the property, he, Wicker, "would bid it off for whatever the judgment and costs might be." Hoppock did accordingly sue and obtain judgment against Chapin & Co.; the judgment having been for $2206. Chapin & Co. were indebted also to Wicker on some transactions growing out of the distillery; and Wicker, who asserted himself to have advanced money on it, caused most of the property already mentioned as left by Chapin & Co., to be removed to Chi-

cago.  Hoppock's counsel meaning to proceed with his execution, gave notice to Wicker of the intention to sell and of the day of sale.  Wicker, however, did not attend the sale, nor was any bid made in his name.  And all the property of Chapin & Co. that was there and could be levied on was knocked down to Hoppock, the only bidder, for the sum of two dollars.  Thereupon Hoppock brought *assumpsit* in the Circuit Court for Northern Illinois—the suit below—against Wicker to recover damages for the breach of his agreement to appear at the sheriff's sale and bid off the property levied on for the full amount of the judgment for which the execution issued.

The court below, against requests by the defendant's counsel to charge otherwise, considered and charged—

1. That the agreement between Hoppock and Wicker was not invalid as tending to prevent the fairness of a judicial sale, and therefore against public policy.

2. That the measure of damages was the amount of the judgments with interest and costs.

The case was now here on writ of error by Wicker, for a review on these points.

*Mr. C. H. Reed, for the plaintiff in error:*

The agreement between Wicker and Hoppock was invalid because calculated to interfere with, and prevent the fairness and freedom of a judicial sale; and prevent competition, and therefore against public policy.

1. The law guards all judicial sales with jealous care, and any agreement or understanding, that any one person competent to bid will abstain from bidding, will not be enforced, no matter how pure the motive moving to such agreement. It matters not even if the defendant in the writ assents to such agreement, for his creditors, as well as himself, have a right to say that nothing shall be done tending to sacrifice his property.*  In this case, by carrying out the agreement,

---

* Thompson *v.* Davies, 18 Johnson, 112; Jones *v.* Caswell, 3 Johnson's Cases, 29 : Brisbane *v.* Adams, 3 Comstock, 129 ; Slingluff *v.* Eckel, 24 Pennsylvania State, 472.

Hoppock could not bid at the sale. It is no answer to say that Hoppock was not bound to bid, and might not have done so even if there had not been this agreement. It is sufficient to say, that independently of this agreement (which in its spirit did put him under an obligation to leave all bidding to Wicker), he was competent and at liberty to bid.

· 2. *As to the measure of damages.* Hoppock himself now holds the judgment against Chapin & Co., in full force, except as to the two dollars bid by himself; and he holds at the same time a judgment against Wicker for the full amount of such judgment, and he holds over and above both the property sold to him at the sheriff's sale. And he would seem to have the right to hold on to and enforce and enjoy all unless this judgment against Wicker be reversed; for Wicker does not stand in the relation of surety for Chapin & Co., nor is he in any position upon any known principle of law or equity, to be subrogated to the judgments against them, on paying the judgment against himself. This sin_ gular result is the consequence of the erroneous ʳule of damages adopted by the court below. It arose out of a departure by the court from that salutary and elementary principle, that in all actions upon contract, "the damages are *strictly limited* to the *direct pecuniary* loss resulting from a breach of the agreement in question."*

If Chapin & Co. were solvent, and they are presumed to be,† then the direct pecuniary loss sustained by Hoppock by the failure of Wicker to bid, was but nominal, as his judgments would be worth par, and they could be worth no more had Wicker fulfilled his agreement. If they were good for a portion, then Hoppock's direct pecuniary loss was only equal to the balance. Whatever the property was worth that Hoppock bid off at the sheriff's sale, should also be deducted from his direct pecuniary loss, for had Wicker bid it off, Hoppock certainly could not. Yet without any ref-

---

* Sedgwick on Damages, 204.
† Walrod *v.* Ball, 9 Barbour, 271.

erence to these questions, the court below instructed the jury peremptorily to find as damages the full amount of the judgments and interest.

*Mr. S. W. Fuller, contra:*

1. The rules relied on by the other side about judicial sales only forbid agreements made with a fraudulent purpose, and agreements *not to bid* at such sales. See specially in the Supreme Court of Massachusetts, *Phippen* v. *Stickney;** in that of New York, *Bame* v. *Drew,*† and in Illinois, *Garrett* v. *Moss et al.*‡

2. The amount which would have been received if the contract had been kept, is the measure of damages, if the contract is broken.§

Mr. Justice SWAYNE delivered the opinion of the court.

It is said that the agreement between the parties " was invalid because calculated to interfere with, and prevent the fairness and freedom of a judicial sale; and prevent competition, and therefore against public policy."

The contract was, that the defendant in error should procure judgments against Chapin & Co. for the rent in arrear, levy upon the machinery and fixtures in the distillery, and expose them for sale, and that the plaintiff in error should bid for them the amount of the judgments.

The validity of such an arrangement depends upon the intention by which the parties are animated, and the object sought to be accomplished. If the object be fair—if there is no indirection—no purpose to prevent the competition of bidders, and such is not the necessary effect of the arrangement in a way contrary to public policy, the agreement is unobjectionable and will be sustained.

In one of the cases to which our attention has been called,‖

---

\* 8 Metcalf, 384.     † 4 Denio, 287.     ‡ 20 Illinois, 549.

₰ Alder et al. v. Keighley, 15 Meeson & Welsby, 116; Hill v. Smith, 12 Id. 617; Thompson v. Alger, 12 Metcalf, 428; Thomas v. Dickinson, 23 Barbour, 431.

‖ Phippin v. Stickney, 8 Metcalf, 384.

there was an agreement between two persons, that one of them only should bid, and that after buying the property, he should sell a part of it to the other upon such terms as the witnesses to the agreement should decide to be just and reasonable.

In another* it was agreed that a party should bid a certain amount for a steamboat, about to be sold under a chattel mortgage, and transfer to the mortgagor an undivided interest of one-third, upon his paying a corresponding amount of the purchase-money.

In a third case† the agreement was between a senior and a junior mortgagee. The former agreed to bid the amount of his debt for a specific part of the mortgaged premises.

In each of these cases the arrangement was sustained upon full consideration by the highest judicial authority of the State.

In the case before us the agreement was, that Wicker should bid. There was no stipulation that Hoppock should not. There was nothing which forbade Hoppock to bid, if he thought proper to do so, and nothing which had any tendency to prevent bidding by others. The object of the contract obviously was to be secure—not to prevent bidding. The benefit and importance of the arrangement to the interests of the judgment debtors is made strikingly apparent when the subject is viewed in the light of the consequences which followed the breach of the agreement. Instead of the property selling for the amount of the judgments, Hoppock was the only bidder, and the property sold was struck off to him for a nominal sum.

There was no error in the ruling of the court upon this subject.

It is urged that the court erred in instructing the jury, that if the plaintiff was entitled to recover, the measure of damages was the amount of the judgments, with interest and the cost.

---

* Bame v. Drew, 4 Denio, 290.
† Garrett v. Moss et al., 20 Illinois, 549.

The general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed. In some instances he is made to bear a part of the loss, in others the amount to be recovered is allowed, as a punishment and example, to exceed the limits of a mere equivalent.

It has been held that, " where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach thereof, at a trifling expense or with reasonable exertions, it is his duty to do it; and he can charge the delinquent party with such damages only, as with reasonable endeavors and expense, he could not prevent."*

If the contract in the case before us were one of indemnity, the argument of the counsel for the plaintiff in error would be conclusive. In that class of cases the obligee cannot recover until he has been actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit. But there is a well-settled distinction between an agreement to indemnify and an agreement to pay. In the latter case, a recovery may be had as soon as there is a breach of the contract, and the measure of the damages is the full amount agreed to be paid.

In a note of Sergeant Williams to *Cutler and others* v. *Southern and others*, it is said that in all cases of covenants to indemnify and save harmless, the proper plea is *non damnificatus*, and that if there is any injury, the plaintiff must reply it, but that this plea " cannot be pleaded, when the condition is to *discharge or acquit* the plaintiff, from such bond or other particular thing, for the defendant must set forth affirmatively the special manner of performance."†

In *Port* v. *Jackson*,‡ the assignee of a lease covenanted to

---

* Miller *v.* Mariners' Church, 7 Greenleaf, 56; Russell *v.* Butterfield, 21 Wendell, 304; Ketchell *v.* Burns, 24 Ib. 457; Taylor *v.* Read, 4 Paige, 571; United States *v.* Burnham, 1 Mason, 57.

† Sanders, 117, note 1.                ‡ 17 Johnson, 239.

fulfil all the covenants which the lessee was bound to perform. It was held that the agreement was substantially a covenant to pay the rent reserved, as it should accrue; that a plea of *non damnificatus* was bad, and that the assignor could recover the amount of the rent in arrear as soon as a default occurred, without showing any injury to himself by the delinquency of the assignee. The assignee was liable also to the lessor for the same rent by privity of estate. The judgment was unanimously affirmed by the Court of Errors.

In *The Matter of Negus*,* the covenant was to pay certain partnership debts, and to indemnify the covenantee, a retiring partner, against them. It was held that the covenant to indemnify did not impair the effect of the covenant to pay, and the same principle was applied as in the case of *Port* v. *Jackson.* We might refer to numerous other authorities to the same effect, but it is deemed unnecessary.

In the case before us, as in the cases referred to, the defendant made a valid agreement, in effect, to pay certain specific liabilities. They consisted of the judgments of Hoppock against Chapin & Co. If Wicker had fulfilled, the judgments would have been extinguished. As soon as Hoppock performed, the promise of Wicker became absolute. No provision was made for the non-performance of Wicker, and the further pursuit by Hoppock of the judgment debtors. Indemnity was not named. That idea seems not to have been present to the minds of the parties. The purpose of Hoppock obviously was to get his money without the necessity of proceeding further against Chapin & Co. than his contract required. There is no ground upon which Wicker can properly claim absolution. He removed and keeps the property he was to have bought in. The consideration for his undertaking became complete, when it was exposed to sale. The amount recovered only puts the other party where he would have been if Wicker had fulfilled, instead of violating the agreement.

The rule of damages given to the jury was correct.

JUDGMENT AFFIRMED.

---

* 7 Wendell, 503.