The opinion of the court was delivered by
Watkins, J.
The object of this action is the recovery from the defendant of the damages resulting from the falling of a wall of a burnt building upon the adjoining house of Dr. Oscar Czarnowski. The insurance company institutes this suit, in its right as assignee and subrogee of Czarnowski, and the latter is also joined as plaintiff, and sues for the use of the former. Claim is made for $8347.37 for the complete demolition of the structure.
On the trial there was judgment for the defendant, and the plaintiffs have appealed.
The facts necessary to be considered are as follows, viz:
The defendant was the owner of Werlein Hall, usually known as the “National Theatre,” which was situated at the corner of Baronne and Perdido streets, in the city of New Orleans, with its front on the latter, and the former and Carroll streets on either side. Adjoining it in the rear was the building of Czarnowski, bearing the municipal number 109, on Baronne street.
The latter building had an altitude of about forty-five'feet, while the theatre arose to the height of about ninety feet. The wall between the two buildings was a party wall, but the wall of the theatre, which rose about forty feet above, was the individual property of the defendant.
At about the hour of 11 o’clock of the night of Friday, July 1, 1887, the theatre was completely destroyed .by fire, and the walls were left standing in a dangerous condition; the rear wall, towering and unsupported, above and slightly inclining toward the Czarnowski building in the rear.
By the falling of the crest or gable of this wall the latter building had its roof crushed in, and was filled with debris, the damage which resulted amounting to $900.
In this condition the walls were suffered to remain until the 7th *1049 «of July following, when they were prostrated by a wind storm of moderate velocity, and in their fall they crushed the Ozarnowski building, causing an additional damage thereto of about $3500..
Both of these properties were insured — the plaintiff carrying a policy of $7500 on the Ozarnowski building.
Soon after the first damage was inflicted, Ozarnowski called upon the insurance company, and it had agreed to adjust the loss, and same was in process of adjustment, when the remainder of the wall fell and crushed the building. During the interval between the two «occurrences, there were repeated interviews held between Ozarnowski and officers of the insurance company with reference to the threatening and dangerous condition of the rear wall of the theatre. The former knew that it ought to have been propped or braced, and he urged the latter to take the wall down or brace it up.
He informed the company that if it considered the house at his risk, he would prop the wall so as to prevent further injury; but it declined to do anything, assigning as a reason that the wall was not at its risk.
It suggested to Ozarnowski that he obtain the consent of the ■defendant to prop the wall, and he refused, on the ground that he had nothing to do with Werlein. He then proposed to the company to contribute $50 toward the expense of propping up the wall, which would not have cost more than $100. But neither the insurance ■company, nor Ozarnowski made any effort to prop the wall, or in any way to prevent it from falling.
. In the meanwhile, the defendant was informed of the burning of his building, and he saw the ruins at 10 o’clock of the next morning •after the fire occurred. He said the walls were in a dangerous condition, and threatening to fall at any time. He was informed by others that they were in a dangerous condition, and advised to tear them down. It was on the second day after the fire that defendant •commenced negotiating with different persons in regard to taking down the walls. Two or three days were thus occupied, and on the 6th of July, at 12 m. , an acceptable estimate was furnished, and the contract was let out. On the following morning the contractor had men on the ground at 7 o’clock, but it was deemed necessary to enter Ozarnowski’s building in order to do the work, and Ozarnowki’s permission was sought for that purpose, and he referred the contractor to the insurance company.
*1050 It appears that it was on the same day — the 7th of July — that the insurance company accepted a bid of $985 for the repair of the damage first done to the Czarnowski building, and when called upon by defendant’s contractor for permission to enter the same, the company urged its own contract as a reason for declining his request. The defendant’s contractor went in search of the contractor of the insurance company, and found him and obtained his consent to enter the building. The work was at once commenced, and the debris was being removed, but that afternoon the walls were prostrated by a storm, as above recited.
In November, 1887, Czarnowski instituted a suit against the Factors and Traders Insurance Company for the, whole amount of his losses, which he fixed at about $4500, alleging, as the foundation of his demand, that during the interval between the burning of the building and the falling of the rear wall, which injured him, it was solely and exclusively in the possession of the burnt building, and that the destruction of his property was due to its fault and negligence. But the plaintiff specially reserved all of his rights against all or any other parties who might be liable to him.
The insurance company answered and made a full denial of all the plaintiff’s averments, and made full reservation of its rights as against all other persons who might be liable to it.
During the progress of the trial, that case was compromised, the insurance company paying the sum of $4359.72. Of this amount $3347.37 was attributed to the damages sustained by Czarnowski’s building on the 7th of July, 1887. Czarnowski made an assignment to the insurance company of all his rights and claims against Werlein. In this suit Czarnowski and the insurance company join in an action in damages ex delieto against Werlein, and it proceeds on the theory that he was guilty of a quasi offence against Czarnowski by reason of his neglect to take proper precautions against the falling of his wall on the property of Czarnowski.
In the suit of Czarnowski against the insurance company, Werlein was not a party, and between him and those parties there existed no contractual relations, but inter se there were. And it was for the specific performance of the company’s contract of insurance that that suit was brought. The compromise of that suit resulted in the full payment by the insurance company of the plaintiff’s demands, and in consideration of that payment alone he transferred his rights *1051 against Werlein to the company. Nothing was expended by the insurance company beyond the amount which was demanded by Czarnowski on its contract of insurance, and nothing was acquired by the insurance company against Werlein, other than the claim for damages ex delicto that Czarnowski preferred against him, and for a single consideration.
The insurance company discharged its contract obligation to Ozarnowski and acquired his claim ex delicto against Werlein for one price. It is on the latter that plaintiff seeks to recover in this suit.
In this discussion, the sole question to be considered is the alleged quasi offence of Werlein. The compromised suit, and the assignment to the insurance company, can be resorted to for the sole purpose of disclosing its title, as Werlein was not a party, and is hot bound thereby.
The manifest theory of plaintiff is, that the insurance eonpany and Werlein were equally bound, though by totally different obligations, to repair Gzarnowski’s losses, and the insurance company, having paid the loss, has, as assignee of Czarnowski, aright of action against Werlein.
Without, however, attending to the question of relative responsibility inter se, which appears to be somewhat metaphysical, we will dispose of that appertaining to the negligence of Werlein, quoad Czarnowski.
The foundation of Czarnowski’s right of action against Werlein is the maxim of our code, that “ every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it.” R. C. C. 2315.
This is supplemented by another, that “ every person is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence, or his want of skill.” R. C. C. 2316.
From these two articles are deduced the principle that “the owner of a building is responsible for the damage occasioned by its ruin, when this is caused by neglect to repair it.” R. O. O. 3322.
The liability of owners of buildings for personal injuries inflicted upon people of populous cities by falling walls, has been frequently maintained by decisions of this court, in keeping with the quoted precepts of the Code. As, for instance, in Camp vs. Church, 7 An. 321; Howe vs. New Orleans, 12 An. 481; Jackson vs. Schmidt, 14 An. 806; Barnes vs. Beirne, 38 An. 281.
*1052 But there are other principles to be taken into consideration in determining an owner’s liability. For the code provides that “the damage caused is not always estimated at the exact value, of the thing destroyed or injured; it may be reduced according to circumstances, if the owner of the thing has exposed it imprudently.'1'1 (Our italics.) R. O. O. 2S2S.
Hence, we must consider whether, under the circumstances detailed in this case, Werlein is responsible to Czarnowski for the damage he sustained by the demolition of his building, through the neglect of the former to strengthen and repair the toppling and dangerous walls of his own; and, while thus considering, we must determine whether Czarnowski imprudently exposed his building to the danger; and we must further determine — if it was so exposed— whether the damage actually sustained must on that account be reduced or altogether disallowed.
This directs our attention to another precept of the code which is applicable. It is as follows, viz:
“ Every one is bound to keep his buildings in repair, so that neither their fall nor any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages which may result from the neglect of the owner in that respect.” R. C. O. 670.
“When a building threatens ruin, the neighbor has a right of action against the owner, to compel him to cause such a building to be demolished or propped up. In the meantime, if there be danger of any damage by its fall, he may be authorized to make the necessary works, for which he shall be reimbursed, after the danger shall have been ascertained by experts.” (Our italics.) R. C. C. 671.
In view of these requirements of law, and being aware of the dangerous condition of the wall of the burnt building, Czarnowski had a right of action against Werlein to compel him to prop it, so as to prevent it falling; and, in the meantime, he might have been authorized to take the necessary means of protecting his own property. This he wholly failed to do, and for that reason was plainly guilty of neglect.
This principle is in keeping with that announced by text writers. For Mr. Sedgwick says, in treating of the “avoidable consequences” of an act, that “the same principle which refuses to take into consideration any but the direct consequences of the illegal act, is applied *1053 to limit the damages, where the plaintiff, by using reasonable precautions, could have reduced them; ’ ’ for ‘ ‘if, [as] said Lord Chief Justice Abbott, at Nisi Prius, you charge anybody with a loss arising from mistake, you should show that no due diligence could have been used by you, which might have prevented that loss.”
He quotes from Mr. Starkie’s work on evidence, the following, viz:
“In an action for an injury occasioned by the negligence of another, it is a good defence to show that the injury so far arose from the negligence of the plaintiff himself, that he might, by ordinary care and caution, have avoided the injury.” 1 Sedgwick on the Measure of Damages, 164,165; Starkie on Evidence, 741.
The same author condenses in a note what he deems to be the true import of the decisions of many of our States, and says:
“A plaintiff must not only show that no negligence on his part contributed originally to the injury, but he must also show due care in avoiding all (consequential) damage. It is also his duty, it is said, to take reasonable steps to make the damage as small as possible.” Ibid., p. 166, and note.
Mr. Sutherland says: “The principle that the injured party must reasonably exert himself to prevent damages, applies alike to cases of contract and tort.” 1 Sutherland on Damages, 152.
“In case of wrongful injury to person or property, the injured party is required to use reasonable exertion to lessen or moderate the resulting damage.” Ibid., 154.
This is also the law in New York. Chase vs. Railroad Company, 24 Barb. 273.
The Federal authorities are of the same import. Warren vs. Stoddart, 105 U. S. 224; Wicker vs. Happock, 6 Wall. 94.
We think the record fully proves that Czarnowski did not employ any reasonable exertion to lessen the danger from the threatening wall or to moderate the resulting damage; that he did not use due care in avoiding all consequential damage by taking the necessary steps to protect his own property.
Conceding for the argument — but which we are not prepared to concede — that Werlein was himself negligent in the premises, it is manifest that Czarnowski was equally aware of the danger which threatened him, and therefore the fault of both is mutual.
In considering a somewhat similar question, our predecessors said, in Mailhot vs. Pugh, 30 An. 1365: “He who has by his fault *1054 contributed to that of another — who has by his obstinacy, or bad judgment, or negligence, or indolence, himself been the author of his own misfortunes, and through these or like causes has contributed to produce the condition of which he complains — can not'invoke in his behalf and for his indemnification an equitable principle which was intended to apply only for the benefit of those who are without fault in the particular matters that form the subject of complaint.”
On a similar controversy we recently said: “If it be true that there was mutual negligence, the principle is, that when the negligence of each party was a proximate cause of the injury, no damages can he maintained. In such eases there can not be usually an apportionment of damages.” Levy vs. Carondelet Canal and Navigation Company, 34 An. 180.
In this case the fault of Werlein and Ozarnowski was at least mutual, and the negligence of each was a proximate cause of the injury. We are satisfied that the plaintiffs are not entitled to recover.
Judgment affirmed.