[No. 4361.    Decided December 16, 1902.]

C. McDANIELS *et al., Appellants,* v. GEORGIANA C. GOWEY, *as Executrix, Respondent.*

SUPPLEMENTAL PLEADINGS — DISCRETION OF COURT.

Allowing defendant to file a supplemental answer is a matter within the discretion of the court, and will only be disturbed upon a showing of abuse.

BONDS — LIQUIDATED DAMAGES OR PENALTY.

Where the vendor of land, upon which there was a mortgage, unpaid taxes and a five-year contract for cutting timber held by third parties, gave a bond to the vendees in a stipulated sum, conditioned that if the obligors should on or before six months from the date of the bond procure the satisfaction of the mortgage and

remove the other incumbrances on the land, then the obligation should be void, the bond must be construed as one not for liquidated damages, but as imposing a penalty under which the obligees were entitled to recover only the actual damages suffered by them.

Appeal from Superior Court, Pierce County.—Hon. THAD HUSTON, Judge.   Affirmed.

*J. H. McDaniels,* for appellants.

*Troy & Falknor,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an appeal from a judgment on the pleadings dismissing the action as to respondent Georgiana S. Gowey.   The action was originally brought in June, 1898, against F. F. Williamson, A. A. Phillips, and John F. Gowey, to recover on a bond executed by them.   After the death of Mr. Gowey, the plaintiffs filed their second amended complaint, substituting Mrs. Gowey, who had been appointed as executrix of John F. Gowey, as party defendant for John F. Gowey, deceased.   The complaint alleged, in substance, that on December 3, 1891, Williamson and wife and one Atkins and wife conveyed about 1,350 acres of land to plaintiffs, C. McDaniels and George F. Orchard, by warranty deed, for a consideration of $20,-000; that at the time of said conveyance said land was subject to a mortgage that had been theretofore executed by said J. C. Atkins to H. A. P. Carter to secure a promissory note dated April, 1890, for $4,000, payable five years after date, executed by said Atkins and Williamson; that there were some other incumbrances on the land, to-wit, $19.41, for unpaid taxes, and also a right in one A. D. Moore and his wife and C. H. Smith and his wife to cut timber from said premises for a period of five years from

and after December 7, 1889; that Williamson and Atkins
agreed to free said land from said incumbrance; that, in
consideration of the price paid for the land, Williamson, as
principal, and Phillips and Gowey, as sureties, executed
and delivered to McDaniels and Orchard and the Puget
Sound Fruit, Land and Development Company a bond of
that date, wherein they acknowledged themselves bound
to the obligees in the sum of $8,000, subject to the condi-
tion that if the obligors should, on or before six months
from the date of the bond, procure said Carter mortgage to
be satisfied and discharged of record, and remove the other
incumbrances on the land, the obligation should become
null and void, but otherwise it should remain in full force
and effect (in explanation of the fact that the Fruit Land
Company was made a co-obligee, the bond recited that it
was the intention of McDaniels and Orchard to convey the
land to the Fruit Land Company) ; that more than six
months had elapsed since the date of the bond, and the
mortgage to Carter had not been paid or discharged of
record; that in April, 1898, an action had been commenced
to foreclose the mortgage, which was then pending in the
superior court for Mason county, and that the obligors on
said bond and the defendants had failed to perform any of
the conditions of the bond; that the Fruit Land Company
had assigned its interest in said bond to plaintiff C. Mc-
Daniels; that plaintiffs had presented their claim upon
said bond to Mrs. Gowey, as executrix; and that it had
been disallowed.    Demand was made for judgment.    De-
fendant Phillips demurred to the complaint, and his de-
murrer was overruled.    Phillips declining to plead fur-
ther, and, Williamson having defaulted, separate judg-
ments were rendered against them for the amount of the
bond.    Mrs. Gowey also demurred.    Her demurrer was

overruled, and she answered. On August 1, 1901, she filed a motion for leave to file a supplemental answer. In this supplemental answer she alleged that since the filing of her amended answer she had procured the Carter mortgage to be released and discharged of record, and that she had tendered the treasurer of Mason county the amount of taxes mentioned in the condition of the bond, but that the treasurer had refused to accept the same for the reason that said taxes had been canceled. She tendered the abstract called for in the condition of the bond, together with $20 as costs and disbursements of plaintiffs, the amount they had expended, and asked that the action be dismissed as to her, and that she be subrogated to the plaintiffs' rights in the judgments against Phillips and Williamson. Demurrers and motions were made to the sufficiency of the supplemental answer, which were overruled. A reply was filed putting in issue certain questions, the discussion of which is not necessary to a determination of this action, and, upon the joining of issues, respondent moved for judgment on the pleadings, whereupon the court granted a motion for judgment, dismissing the action as to Mrs. Gowey, but refusing to subrogate her to the rights of appellants in the judgments against Williamson and Phillips.

The assignments are that the court erred (1) in granting respondent's motion to file her supplemental answer; (2) in denying appellants' motion to strike said supplemental answer; (3) in overruling appellants' demurrer to respondent's supplemental answer; (4) in granting respondent's motion for judgment on the pleadings, and rendering judgment dismissing the action as to her. The first two assignments involve the discretion of the court in relation to the establishment of the pleadings. It does not appear to us that the court abused its discretion in this regard, and therefore no error was committed.

The third and fourth assignments may be considered together. The underlying question in this case is whether the bond sued upon is an indemnifying bond, or whether the provision in such bond is for liquidated damages. If such provision is to be construed as liquidated damages, the court erred in its judgment, and the parties to the bond are responsible for the amount stated therein. But if the bond is an indemnifying bond, the plaintiffs can recover only such actual damages as they allege and prove. There is no damage alleged in the complaint; the plaintiffs standing on their legal right to recover the amount of the bond, upon the theory that the amount stated is liquidated damages. We think, under the overwhelming weight of authority, the bond in this case must be construed to be an indemnifying bond, and that its principal use and office was to insure to the purchasers of this land a clear title to the same; that it was intended to be, and was in fact, a covenant against incumbrances. Nor do we think that the authorities cited by the appellants sustain their contention. The quotation from 3 Parsons on Contracts (6th ed.), 186, in effect that if one is surety for another, who is bound to pay a third party a certain sum at a certain time, and the principal promises the surety that he will pay that sum at that time, so as to discharge the surety if he fails to pay it so that the surety becomes liable, the surety may recover from the principal on his promise before the surety pays the debt; and if the principal agrees with the surety to pay the debt at a certain time, and fails to pay it at that time, the surety may thereupon recover the whole amount of the debt without showing any actual damage,—may be conceded to be the law. But it is not involved, as we understand it, in the case at bar, for that is based upon the idea and the statement that the surety has become liable, and

the liability of the surety is the ground of plaintiffs' complaint. No liability of these plaintiffs, however, is shown. In fact, the supplemental answer interposed by Mrs. Gowey shows that they cannot be subject to any liability, and that the liability which was the subject of the contract has been extinguished by the satisfaction of the mortgage. It is even stated by Mr. Parsons, in the first part of the paragraph quoted, that, as a general rule, a surety for the payment of money cannot sue his principal until he pays the debt; and the universal rule is that, in case of a breach of contract by one of the contracting parties, the damages which the other ought to receive should be either such as may fairly and reasonably be considered as arising naturally or according to the usual course of things from such a breach, or such as may be reasonably supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. A perusal of this obligation shows that the central idea was a warranty of title, in order that the purchasers might sell the land without being restricted or hampered by the mortgage which was upon it. It is true that the condition is for an affirmative act or payment upon the non-performance of the conditions of the contract; but the following clause, it seems to us, interprets the contract, and shows what the real intention of the parties was: "And whereas, it is understood by all the parties hereto that it is the intention of said C. McDaniels and George F. Orchard to convey the said premises to the Puget Sound Fruit Land and Development Company; and whereas, the grantors in said deeds to said C. McDaniels and George F. Orchard have covenanted to convey to said George F. Orchard and said C. McDaniels the said premises free and clear from all incumbrances; and

whereas there is a mortgage," etc., "now, therefore, if the said obligors shall," etc., "then this obligation shall be void." It is a reasonable inference that this bond was demanded simply as an additional security of the covenants of warranty. In other words, the grantees obtained Gowey and Phillips, in addition to the grantors named in the deed, as an assurance that the land conveyed would be free from incumbrances. While, as we shall hereafter see, the intention of the parties will not alone determine whether the obligation is to be construed as a penalty or as liquidated damages, it has a bearing on the fact as to whether it is in fact liquidated damages or a penalty, and, before the contract could be adjudged to be one for liquidated damages, it would have to appear that such was the intention of the parties, although it might not necessarily be so determined, even if it did appear that such was the intention, when the actual fact did not exist.

The case of *Ham v. Hill,* 29 Mo. 275, was where A. and B. were partners. A., transferring his interest to B. and retiring from the firm, took from the latter a bond of which the following is a condition:

"Whereas the said B., having purchased the interest of said A. in the firm of 'A. & B.,' in the carriage business in the city of B., Mo., and has agreed with the said A. to assume all partnership liabilities of said firm incurred between April 1, 1858, and July 1, 1858, and to pay the same whenever payment is demanded legally by the creditors of said firm; now, if the said B. shall observe and keep said agreement and pay said debts in manner and form above described, then this bond to be void; otherwise to remain in full force and virtue."

Held, that this was not merely a bond of indemnity to A.; that the obligation thereby created was not contingent upon A.'s being compelled to pay or his actually paying to the creditors of the firm the debts embraced within the

bond, and that a right of action on the bond accrued to A. so soon as B. failed to pay those debts on demand of the corporations; and that the measure of damages would be the amount of debts provided for in the bond. But, while this case is decidedly against the weight of authority on an obligation of that kind, where the amount of damages could be easily ascertained in dollars and cents, it is not at all the case at bar; for there the liability of A. to pay the debts of the firm was still existing, and there was no showing that the same had been paid at the time of the breach, or any other time, and it was very much the same case as this case prior to the payment of the mortgage and the filing of the supplemental answer. But, even in that case, the rule contended for by the appellants was not announced, for the court in its conclusion said:

"Of course, if the bond has been paid in part, or otherwise satisfied, the defendant will be entitled to the benefit of such payment or satisfaction."

Under that ruling, Mrs. Gowey having paid the obligation which was the basis for the bond, she should be entitled to the benefit of such payment or satisfaction, in the language of that court, and discharged from her liability, as was done.

*Crofoot v. Moore,* 4 Vt. 204, holds that a promise to pay certain notes signed by the promisee and another is broken when those notes become payable, and the statute of limitations then begins to run; that such a contract is not a contract of indemnity, but an action will lie upon it as soon as the pay day arrives without payment by the promisor. We see nothing in this case that will aid appellants' contention. There was no contention there that the notes had been paid at any time.

In *Wicker v. Hoppock,* 6 Wall. 94, it was held that an agreement that one should procure judgment against his

debtor, levy upon and sell his property, and that the other party to the agreement should bid the amount of the judgment for the property, was valid; and that where such other party did not attend the sale, and such property brought merely a nominal sum, the measure of damages was the amount of the judgment, with interest and the costs. This, we think, was a proper holding, for it would have been impossible, under the circumstances, as shown by the statement of facts in this case, for the jury to have determined the proper measure of damages, and in such case the parties had a right to contract with reference to what the measure of damages should be in case of a breach. But the court, in justification of its judgment in that case, says, in conclusion:

"The amount recovered only puts the other party where he would have been if Wicker had fulfilled, instead of violating the agreement."

In the case at bar the appellants are exactly in the same position now that they would have been in if this mortgage had been released within the time prescribed in the bond. They do not allege any damage by reason of the fact that there was a clouded title, and that they were unable to receive the full value of the land by reason of such cloud. In fact, it appears that they sold the land before the time for the release of the mortgage had arrived, and any damage which they could possibly have been subjected to had been incurred before the breach.

Such, in effect, are the cases relied upon by the appellants. They complain that it may be, for all that appears from the answers, that the mortgage was satisfied for less than its face value; that there is nothing to show what, if anything, respondent paid, or how much was due on it at the time of the payment. This is a question that is of no

interest to, or concern of, the appellants.    The mortgage, according to the answer, has been satisfied, and the appellants' responsibility in that regard has terminated by the satisfaction.    While it is sometimes difficult to determine from the language of a contract whether the amount stated in the obligation should be construed to be liquidated damages or a penalty, there are some general rules which are universally accepted by the courts as a guide to interpretation.    In the first place, as the doctrine of compensation is a justly favored doctrine with the courts, and is founded on a maxim of general jurisprudence, recognized as fundamental in the law of every enlightened people, viz., the doctrine of fair dealing, a contract will not be construed to be a contract for liquidated damages unless it plainly appears that the idea of liquidated damages has not only been substituted for a penalty by the parties to the contract, but rightfully substituted.    The contract may be construed to be one for liquidated damages when, from the nature of the business which is the subject of the contract, the damages will be difficult to ascertain or impossible to be estimated by reference to any pecuniary standard, and where the parties to the contract, by reason of the peculiar conditions surrounding them and their more intimate acquaintance with such conditions, are better able to determine the actual damages which will be suffered by the breach.    In such cases the parties are allowed to determine in advance what the damages will be, and incorporate them in the contract.    But the essential idea must always be the actual damages, and, when it appears that such is not the case the claimant will be relegated to his proof of damages.

"If any doubt exist as to the right of a holder of a covenant for seisin or of right to convey to recover the consideration money or a part of it when he has neither lost

the land nor incurred expense in purchasing the paramount title, there is none with respect to the covenant against incumbrances, which, while being considered equally with them to be broken as soon as made, is yet, as respects the measure of damages, treated purely as a covenant of indemnity, and it is well settled that if the incumbrance has inflicted no actual injury upon the plaintiff, and he has paid nothing towards removing or extinguishing it, he can obtain but nominal damages, as it is considered that he shall be not allowed to recover a certain compensation for running the risk of an uncertain injury." Rawle, Covenants for Title (5th ed.), § 188—citing *Delavergne v. Norris,* 7 Johns. 358 (5 Am. Dec. 281), where it was held that where the plaintiff, when he sues on a covenant against incumbrances, has extinguished the incumbrance, he is entitled to recover the price he has paid for it. But if he has not extinguished it, but it is still an outstanding incumbrance, his damages would be nominal, "for he ought not to recover the value of an incumbrance," said the court, "on a contingency where he may never be disturbed by it." "This," says the author, "is the reasonable rule." When the true state of facts is considered in this case, the language of Mr. Rawle is particularly pertinent, for the true state of facts here is that the incumbrance has been removed, and it does not appear that the appellants have paid anything towards extinguishing it; and it does affirmatively appear—which carries the case even beyond the text—that it has been extinguished by the respondent.

To the same effect, *Coburn v. Litchfield,* 132 Mass. 449.

In *Eaton v. Lyman,* 30 Wis. 41, the same doctrine was announced. The case of *Briggs v. Morse,* 42 Conn. 258, while it was an action under a covenant against incumbrances, which it was claimed had been broken by the existence of a lien on the land for taxes due from defendant,

the language of the court is applicable to the case at bar. It said:

"The plaintiff has paid no part of the tax in question; he has paid nothing toward the extinguishment of the incumbrance, the existence of which he complains of as a breach of the defendant's covenant. His damages therefore in this action must be nominal merely."

In *Willets v. Burgess,* 34 Ill. 494, it was held that, on a breach of covenant against incumbrances, the grantee can recover only such damages as he has actually sustained. If by it title has failed and the premises have been lost, he may recover the full extent of the covenant, or, if he has removed the incumbrance, he may recover the sum paid for that purpose.

In *Tayloe v. Sandiford,* 7 Wheat. 13, it was held that in general a sum of money in gross to be paid for the nonperformance of an agreement is considered as a penalty, and not as liquidated damages; that where in a building contract the following covenant was contained, "The said houses to be completely finished on or before the 24th of December next, under a penalty of $1,000, in case of failure," this was not intended as liquidated damages for the breach of that single covenant only, but applied to all the covenants made by the same party in that agreement; that it was in the nature of a penalty, and could not be set off in an action brought by the party to recover the price of the work. It will be noticed that in the case at bar the penalty attaches as much to the payment of the pittance of taxes and in satisfaction of the parties' right to cut timber on the land as it does to the releasing and satisfaction of the mortgage; and, were appellants' contention true, if the mortgage had been released and there was nothing left but the payment of a few dollars taxes, they would still be

entitled to recover their $8,000, the sum denominated in
the bond.

Mr. Clark, in his work on Contracts (p. 598), says:

"In determining whether the sum named is a penalty or
liquidated damages, these rules may be stated: (a) The
courts will not be guided by the name given to it by the
parties. (b) If the matter of the contract is of certain
value, a sum in excess of that value is a penalty. (c) If
the matter is of uncertain value, the sum fixed is liquidated
damages. (d) If a debt is to be paid by installments, it
is no penalty to make the whole debt due on non-payment
of an installment. (e) If some terms of the contract are
of certain value, and some are not, and the penalty is ap-
plied to a breach of any one of them, it is not recoverable
as liquidated damages."

It would be impossible, under subdivision "e," to say
nothing of the other rules, to construe the bond in question
to be a contract for liquidated damages.

"In case of an agreement to do or refrain from doing
any particular act, secured by a penalty, the amount of the
penalty is in no sense the measure of compensation, and
the plaintiff must show the particular injury of which he
complains and have his damages assessed by the jury. It
may therefore be laid down as a settled rule that no other
sum can be recovered under a penalty than that which
shall compensate the plaintiff for his actual loss." Sedg-
wick, Measure of Damages, 206.

This court in *Everett Land Co. v. Maney,* 16 Wash.
552 (48 Pac. 243), and in *Krutz v. Robbins,* 12 Wash.
7 (40 Pac. 415, 28 L. R. A. 676, 50 Am. St. Rep. 871),
while holding the cases there under consideration to con-
stitute contracts for liquidated damages, laid down the
rules which would prevent such a holding in the case at
bar; and it is said in the former case that where the dam-
ages resulting from the breach of a contract are indefinite,
uncertain, and difficult to prove, the amount stipulated in

the contract as damages in case of a breach should be considered as liquidated damages and not as a penalty; "thus," said the court, after quoting Pomeroy on Equity Jurisprudence, § 441, "carrying out the idea that, to constitute a stipulated sum a penalty, the damages must be easily ascertained by a jury, and that if, under the circumstances of the case, the damages cannot be ascertained with any degree of certainty or safety, the stipulated sum must be considered liquidated damages. It seems to us that this case falls squarely within the second rule announced, that there is no adequate means of ascertaining the precise damage which may result from a violation, and that the parties therefore may, if they please, contract to fix upon the amount of compensation payable by a defaulting party in case of a breach." But in this case, even presuming the mortgage had not been satisfied, there would be no difficulty whatever in determining the amount which was due on account of the breach. It would be simply a mathematical computation.

In *Jaquith v. Hudson,* 5 Mich. 123, in discussing this question, it was said by the court:

"And while there are some isolated cases (and they are but few), which seem to rest upon no very intelligible principle, it will be found, we think, that the following general principles may be confidently said to result from, and to reconcile, the great majority of the cases, both in England and in this country:

"First. The law, following the dictates of equity and natural justice, in cases of this kind, adopts the *principle of just compensation* for the *loss* or *injury actually sustained;* considering it no greater violation of this principle to confine the injured party to the recovery of *less,* than to enable him, by the aid of the court to extort *more.* It is the application, in a court of law, of that principle long recognized in courts of equity, which, disregarding the

penalty of the bond, gives *only* the *damages actually sustained.* This principle may be stated, in other words, to be, that courts of justice will not recognize or enforce a contract, or any stipulation of a contract, clearly unjust and unconscionable; a principle of common sense and common honesty so obviously in accordance with the dictates of justice and sound policy, as to make it rather matter of surprise that courts of law had not always, and in all cases, adopted it to the same extent as courts of equity. And, happily for the purposes of justice, the tendency of courts of law seems now to be towards the full recognition of the principle, in all cases."

The court then proceeds to discuss the question of the right of the parties to make contracts for liquidated damages, and concludes that such right exists only when the contract provides for liquidated damages in fact. Said the court:

"Again, the attempt to place this question upon the intention of the parties, and to make this the governing consideration, necessarily implies that, if the intention to make the sum stipulated damages should clearly appear, the court would enforce the contract according to that intention. To test this, let it be asked, whether, in such a case, if it were *admitted* that the parties actually *intended* the sum to be considered as *stipulated damages,* and not as a penalty, would a court of law enforce it for the amount stipulated? Clearly, they could not, without going back to the technical and long exploded doctrine which gave the whole penalty of the bond, without reference to the damages actually sustained. They would thus be simply changing the *names* of things, and enforcing, *under the name of stipulated damages,* what in its *own nature* is but a *penalty."*

This is an exhaustive case, setting forth in clear and vigorous language, and, it seems to us, faultless logic, the principles underlying this proposition.

But there seems to be no great disparity of opinion among courts or textwriters on this proposition.

"Another most important class of changes in the law consists in the adoption, to a considerable extent, of the equitable doctrines concerning penalties and forfeitures. The ancient common law rigidly exacted all penalties and enforced all forfeitures if the act which should prevent them was not done at the very time and in the precise manner stipulated.   Equity from the earliest period of its growth adopted the policy of relieving against penalties and forfeitures, by generally treating the time of performance as immaterial, and a substantial conformity to the stipulated manner of it as sufficient, and by giving to the creditor what was justly and equitably his due, and compelling him to forego the surplus which he had exacted, and which the law permitted him to retain.   These equitable doctrines have to a great extent been transferred into the law of the American states.   Law courts give judgment for the amount really due, and not for the penalty, and often accept a subsequent performance without exacting the forfeiture.   The most familiar example is that of a bond with penalty, conditioned for the payment of a smaller sum which represents the real debt.   The equitable doctrine restricting the recovery to the sum constituting the actual debt, with interest for the delay, has been everywhere accepted as a settled rule of the law. This modification of the common law has generally been extended so as to include all cases where a penalty or forfeiture has been agreed upon as security for the payment of a certain or ascertainable sum of money."   1 Pomeroy, Equity Jurisprudence, § 72.

In discussing the same question, in § 381, the author says:

"The general doctrine was finally settled that, wherever a penalty or forfeiture is inserted merely to secure the payment of money, or the performance of some act, or the enjoyment of some right or benefit, equity regards such payment, performance, or enjoyment as the real and principal

intent of the instrument, and the penalty or forfeiture as merely an accessory, and will therefore relieve the debtor party from such penalty or forfeiture, whenever the actual damages sustained by the creditor party can be adequately compensated. . . . If the principal contract is merely for the payment of money, there can be no difficulty; the debtor party will always be relieved from the penalty or forfeiture upon paying the amount due and interest. If the principal contract is for the performance of some other act or undertaking, and its non-performance can be pecuniarily compensated, the amount of such damages will be ascertained, and the debtor will be relieved upon their payment."

Again, in § 433, it is said:

"The test which determines whether equity will or will not interfere in such cases is the fact whether compensation can or cannot be adequately made for a breach of the obligation which is thus secured. . . . It is a familiar doctrine, therefore, that if the penalty is inserted to secure the payment of a pecuniary obligation, relief against it will be granted to the debtor upon his payment of the real amount due and secured, together with interest and costs, if any have accrued."

And what is said in § 434 of the form of relief is applicable to this discussion:

"Under the modern legislation, and especially under the reformed procedure, the rights of the debtor party would be protected, and the relief obtained, without any separate suit in equity, but by an equitable defense set up in the action at law by which the creditor sought to enforce the literal terms of the agreement. [That is exactly the procedure here.] . . . The equitable doctrine, as above described, has to a considerable extent been incorporated into the law, partly as the result of statute, and partly from the gradual development of equitable principles in the common law. Whatever be the true explanation, the rule is now very general, even if not universal, that a recovery in actions at law upon contracts which

contain an express stipulation for a penalty is limited to the actual debt due, or the actual damages sustained."

Again, in § 440:

"If upon the whole agreement the court can see that the sum stipulated to be paid was intended as a penalty, the designation of it by the parties as 'liquidated damages' will not prevent this construction; if, on the other hand, the intent is plain that the sum shall be 'liquidated damages,' it will not be treated as a penalty because the parties have called it by that name. It is well settled, however, that if the intent is at all doubtful, the tendency of the courts is in favor of the interpretation which makes the sum a penalty."

Much more is said by the same author which is pertinent here in this case, but which it is not practicable to insert.

In conclusion, we think the authority is overwhelming to the effect that the bond in this case must be construed as a contract for indemnity; that the object sought by the bond was to insure a clear title to the land; that that object has been accomplished by the satisfaction of the mortgage, the payment of the taxes, and the expiration of the time in which the timber was to be cut; that no damages have been alleged by the appellants; and that none could be suffered under the pleadings; and the judgment of the court was right and will be affirmed.

REAVIS, C. J., and MOUNT and ANDERS, JJ., concur.