(74 Misc. Rep. 238.)

ROBERTS et al. v. KEENE et al.

(Supreme Court, Special Term, New York County. November, 1911.)

1. SPECIFIC PERFORMANCE (§ 5*)—INDEMNITY CONTRACT—REMEDY AT LAW.
   Where a contract simply guarantees or gives indemnity against loss, no breach occurs until loss has been suffered, and an action for damages is an adequate remedy; but where the contract includes a promise to pay

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an obligation against which the indemnity is given, a bill in equity will lie to enforce performance by the promisor and exonerate the promisee.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 5–8; Dec. Dig. § 5.*]

2. SPECIFIC PERFORMANCE (§ 70*)—SALE OF CORPORATE STOCK—REMEDY OF BROKER.

Where a complaint by stock exchange brokers against defendants who empowered them to buy stocks, and other defendants from whom the brokers bought stocks under such authority, alleged that the purchasing defendants agreed to take and pay for the stocks and that the brokers should not be required to advance money on their purchases, the brokers are entitled to a decree for specific performance of the contract of the purchasing defendants.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 203; Dec. Dig. § 70.*]

3. ACTION (§ 38*)—SINGLE CAUSE OF ACTION.

Where contracts were made at different times with brokers for the purchase of different amounts of the same stock by the same principals, the brokers have but one cause of action against the principals, though the arrangement between them is included in more than one instrument.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 549; Dec. Dig. § 38.*]

4. ACTION (§ 38*)—MISJOINDER OF CAUSES—INTERESTS OF PARTIES.

Where stock exchange brokers, acting under the authority conferred in separate instruments by the same principals, bought certain shares from one person and subsequently other shares from another, separate causes of action arise from each purchase which cannot be united in a single action, since each does not equally affect all the parties.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 549; Dec. Dig. § 38.*]

5. SPECIFIC PERFORMANCE (§ 106*)—SALE OF STOCK BY BROKER—ACTION AGAINST PRINCIPAL—PARTIES.

In an action by stock exchange brokers against principals who had authorized the purchase of stock, and against the sellers of the stock, to compel performance of a contract, the plaintiffs' creditors are not necessary parties.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 342–351; Dec. Dig. § 106.*]

Action by J. Nevens Roberts and others against James R. Keene and others. Motion by plaintiffs for judgment on the pleadings. Denied, with leave to amend complaint.

Hays, Hershfield & Wolf, for plaintiffs.
Davies, Auerbach, Cornell & Barry, for defendants.

PENDLETON, J. This is a motion by plaintiffs for judgment on the pleadings (Code Civ. Proc. § 547), consisting of a complaint and separate demurrers by the respective defendants, and is therefore substantially a trial of the issues of law raised by the demurrers. The grounds of the demurrers are: (1) That the complaint does not state facts sufficient to constitute a cause of action. (2) Misjoinder of causes of action. (3) Nonjoinder of defendants.

Plaintiffs were stock exchange brokers. The defendants include two classes: A. Defendants who employed plaintiffs to buy stocks on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the stock exchange for them, as their brokers and agents, and agreed to take and receive and pay for the same as bought and indemnify and save harmless plaintiffs from any loss or damage by reason thereof. B. Defendants, members of the stock exchange, from whom plaintiffs' bought the said stock. Class A, having failed to take and receive the stock, defaulted in their contract with plaintiffs, who, by reason thereof, were unable to or did not pay for the stock bought, and it was in consequence sold out under the stock exchange rule, resulting in a liability of plaintiffs to members of class B in varying amounts, aggregating some $600,000. The members of class B have neglected, failed, and refused to sue class A, as they might, as principals. This is a bill in equity by plaintiffs to compel class A to pay class B and that plaintiffs be exonerated from liability.

As to first ground of demurrer, it is urged in support of the demurrers that the contract between plaintiffs and class A was solely one to indemnify plaintiffs against loss, and that, there having been no loss, plaintiffs not having paid class B, there has been no breach, and plaintiffs are not entitled to relief.

[1] The difference between relief at law by way of damages and relief at equity by way of specific performance is one of remedy. Equity no more than law will intervene until there has been a breach of contract, for until that has happened there is no cause of action of any kind. In cases of guaranty or indemnity against loss, pure and simple, there can be no breach of contract until a loss has been suffered. It is not a case of a technical breach before loss, entitling the promisee to nominal damages, which become substantial after the loss is incurred; but until a loss has been suffered there can be no breach. Brown v. Mechanics' & Traders' Bank, 43 App. Div. 173, 59 N. Y. Supp. 354. Instances of such contracts are obligations to save a sheriff harmless against loss or damage by reason of the levy on chattels claimed by a third party, guaranties against loss by reason of the doing of any particular act, such as entering on real property, extending credit to a third person, etc. In all such cases the contract of the obligor is only to protect the obligee against loss, and, until a loss is suffered, no breach can occur and no cause of action arise.

There is another class of cases, however, where with the guaranty against loss there is still further contract. Take, for instance, the case of two persons executing as makers a promissory note where, as between themselves, one is only to act as surety for the other; in other words, while both are bound as principals to the holder of the note, as between themselves, the principal agrees that he will pay the note when due. There the principal has defaulted as against the surety as soon as he fails to pay the note. It is true the surety may pay the note and sue the principal at law for damages, and in that aspect it is a guaranty against loss; but the contract was broken by the principal when he failed to pay the note and not first only after the surety had incurred a loss by himself paying it. In this latter class of cases, the surety, on proper showing, is entitled to maintain a bill in equity to compel the principal to pay the debt, and that he

(the surety) be exonerated. The contract he is seeking to enforce specifically is not the guaranty against loss, but the contract of the principal with the surety to pay the note when due.

This distinction between the two classes of cases is the determining question which runs through and explains all the cases. In the former class there is no breach until the loss has been suffered, and then an action at law will give the proper relief, viz., damage for breach of the contract. In the latter the breach has occurred before substantial loss, and a bill in equity will lie to compel performance by defendants and exoneration of plaintiffs. This distinction is clearly pointed out in Central Trust Co. v. Louisville Trust Co., 100 Fed. 545, 40 C. C. A. 530. There certain bondholders having agreed to indemnify the trustee against loss as a condition of its proceeding to enforce the mortgage, the trustee prosecuted the case to foreclosure and sale. In the decree certain amounts were allowed counsel to the trustee as fees. The property did not sell for enough to meet the liens prior to the mortgage, and, consequently, there were no funds available for the payment of such fees. Thereupon the trustee brought a bill in equity to compel the indemnitors to pay the counsel fees incurred by it. It was held the action would not lie, as the indemnity agreement was against loss only; and, until the loss had been incurred by the trustee paying the fees, there could be no breach. Judge Lurton, in the opinion, says:

"The covenant sought to be enforced is *not one to pay the counsel fees incurred by the trustee*," but "*to indemnify and hold harmless the said trustee from any loss or damage on account of costs, counsel fees, and other expenses of such litigation.*" The complainant has paid nothing on account of the counsel fee so incurred and has not, therefore, suffered "any loss or damage on account thereof and, confessedly, could not maintain any action at law for a breach of a covenant. Wicker v. Hoppock, 6 Wall. 94, 18 L. Ed. 752; Mills v. Dow's Adm'r, 133 U. S. 424, 10 Sup. Ct. 413, 33 L. Ed. 717; Johnson v. Risk, 137 U. S. 308, 11 Sup. Ct. 111, 34 L. Ed. 683. These cases emphasize the distinction between a covenant to pay and one to indemnify, and hold that an action will lie for breach of a covenant to pay before actual payment by the plaintiff, but not upon a mere covenant of indemnity, until the plaintiff has actually sustained loss or damage. Learned counsel concede that this distinction is one well recognized at law, but contend that a court of equity will, on the principles of a quia timet bill,· compel the specific performance of the contract of the indemnitor in advance of any actual loss or damage, even though the covenant be one of simple indemnity. That a bill quia timet will lie in favor of a surety before payment, to be exonerated by a decree compelling the debtor to pay off the obligation hanging over him, may be conceded. Story, Eq. Jur. §§ 327, 730, 850. * * * The *indemnitors, under the covenant here involved, come under no obligation whatever to the counsel employed by the complainant, and did not agree with complainant to pay such fees, but to 'indemnify' the trustee against any such charges.*"

Judge Lurton, in the last sentence, points out the exact difference between the two classes of cases above referred to. If, in the case before him, the indemnitors had agreed to pay the counsel for the trustee, the bill in equity would evidently have been sustained, because, as pointed out by him, the covenant then sought to be enforced would not be the covenant to indemnify and hold harmless but the covenant that the indemnitors would pay the counsel fees; in other

words, to quote Judge Lurton again, "these cases emphasize the distinction between a covenant to pay and one to indemnify," and hold that an action will lie for a breach of the covenant to pay before actual payment by the plaintiff, but not upon a mere covenant of indemnity until plaintiff has actually sustained loss or damage. The reason of the distinction is obvious. The principal who has failed to pay the debt when due is at once in default to the surety, and the latter has at once a cause of action. If he sues at law, he can only recover nominal damages, because he has not paid the debt; such relief is entirely inadequate, and that for this reason there is at this point no adequate remedy at law is the very basis of the equity jurisdiction to give relief by way of specific performance and thus compel the principal, by paying the debt, to exonerate the plaintiff surety.

It is urged that there is a remedy at law for damages, because he may pay the debt and then sue at law. Such argument is based on an entire misconception of the rule. The remedy at law to bar equitable relief must be a remedy in præsenti, and not what may be the relief after plaintiff has done or suffered something more. As well might a demand for equitable injunctive relief against the dangers of overburdening a party wall, for instance, be denied because, if plaintiff waits until his building has fallen down, he will have adequate relief at law for damages. In Woodruff v. Erie R. Co., 93 N. Y. 609, the court said:

"Although the plaintiff, upon payment of such interest, may be entitled to recover it back from the Erie Railroad Company in an action at law, he is under no equitable obligation to pursue such course,"

—and the equitable relief was granted.

That such equitable cause of action exists in the second class of cases above described cannot be disputed. The authorities are uniform. The question is, therefore: To which class does the case at bar belong on the facts alleged in the complaint, which, for the purposes of this motion, is conclusive?

[2] The complaint specifically alleges that defendants of class A agreed to indemnify and save harmless the plaintiffs from loss or damage, and the prayer for relief asks for the specific performance of that promise or contract. If that were all, there would be little difficulty in saying that the contract was one of pure and simple guaranty against loss, and until plaintiffs had paid the debts to class B there could be no loss and no breach of contract. The complaint, however, must be looked at as a whole, and the prayer for relief includes a prayer that plaintiffs be indemnified "from the indebtedness incurred by them as aforesaid" and "be exonerated and relieved from liability to the defendants named in paragraph 55 of the complaint," i. e., class B, and for expenses to be paid "out of the moneys directed to be paid in enforcement and performance of the agreement with the plaintiffs set forth in this complaint," and "for other and further relief." The agreement alleged in the complaint is set forth in paragraphs 53 and 54. Under these allegations, defendants of class A authorized plaintiffs to buy for them certain stocks and agreed to take and pay for the same; that plaintiffs should not have to advance any

money on the purchases; and that they would indemnify plaintiffs from any loss. This was more than an agreement to indemnify from loss, pure and simple. When defendants bought the stock, they acted as brokers or agents for defendants of class A. Making the contracts in their own name, although for such defendants, plaintiffs were liable, so far as the sellers of the stock were concerned, as if they were principals; and defendants of class A were also liable to the sellers as undisclosed principals. The sellers of the stock had their remedy against both plaintiffs and class A; but as between plaintiffs and class A the latter were principals and plaintiffs simply sureties. When defendants of class A refused to pay for the stock, they defaulted in their obligation to class B as undisclosed principals and in their obligation to plaintiffs as well. This is not the case of a simple guaranty against loss. It is a case where two are bound on a contract to pay; both are principals so far as the holder of the contract is concerned, but as between themselves one is principal and the other surety. In such case a breach occurs so soon as the principal fails to pay the debt, and the surety is entitled to equitable relief by way of specific performance of the contract with the surety to make such payment. The allegations of the complaint bring plaintiffs within the rule entitling them to equitable relief, and the demurrers are not well taken.

[3] As to the alleged misjoinder of causes of action, defendants of class A are composed of two sets of persons: (1) Signers of an agreement of March, 1909, to co-operate in the purchase of a certain portion of the stock above mentioned. (2) Signers of another agreement of July 14, 1909, to co-operate in the purchase of a certain other portion of said stock. The fact of there having been two agreements, it is claimed, shows that there are two causes of action set forth.

If it appeared that plaintiffs had been employed by the signers of No. 1 agreement and separately by those of No. 2 agreement, such contention would be well founded, as there would have been two agreements with plaintiffs—one by one set of defendants and one by another. The complaint, however, alleges only one agreement with plaintiffs, and that by both sets of defendants acting together. It is entirely immaterial whether the arrangement between the defendants themselves is embodied in one or many agreements; plaintiffs having been employed by one agreement with all.

[4] There is, however, a more serious difficulty when we come to consider the joining in this action of all the defendants of class B. As heretofore pointed out, plaintiffs' cause of action is based on their right in equity to compel the payment by their principal, class A, of an obligation incurred by them to a person from whom they made the purchase of the stock. Obviously this is a matter between plaintiffs, class A, and the person in question, i. e., the seller of the stock, with which other persons have nothing to do. The fact that plaintiffs for the same principal made other purchases and have a similar right of action in connection with such other purchases does not make one seller a proper party to the action in which another seller is interested; in other words, as to the members of class B there is a separate cause

of action against each with which the others have nothing to do. When plaintiffs purchased stock from one member of class B, the position of the parties was fixed, to wit, plaintiffs class A as principal, and the member of class B, from whom the purchase was made. If no further purchase had been made, there would have been a complete and distinct cause of action. When subsequently plaintiffs purchased from another member of class B, another distinct and separate cause of action arose. The fact that plaintiffs' right against class A, in both cases, is based on the same agreement does not make it one cause of action. Under the Code (section 484) actions to be joined must affect all the parties. This is not such a case, and hence this ground of demurrer must be sustained.

[5] The alleged defect of nonjoinder of defendants is predicated on the contention that plaintiffs' other creditors should be joined: (1) It does not appear there are any, and therefore the question as to their being proper parties cannot be raised on demurrer. (2) They are not necessary parties. They have no interest. Defendants of class B are entitled to recover these moneys from class A as principals. Plaintiffs are enforcing their equitable right to compel the specific performance of the contract to pay this to members of class B. That is not an asset or property which other creditors could reach to satisfy their claims. Plaintiffs have no claim for damages which would be assets. Before plaintiffs would have a claim against class A for damages, they would be obliged to pay out an exactly like amount to class B. This shows there is nothing for general creditors, even if the facts necessary to give them any claim, such as insolvency, etc., appeared.

As to the demurrers by defendants, who are members of both classes A and B, being both buyer and seller, they can have no claim against plaintiffs.

The foregoing conclusions as to all the grounds of demurrer are necessarily based on the allegations of the complaint. Whether they will, on the evidence, be established in their entirety in all respects, may be a question.

Motion denied, with leave to the plaintiffs to amend the complaint within 20 days after service of a copy hereof on payment of costs to be taxed, including $10 costs of this motion.

Ordered accordingly.