**Michaele Cowart NORD,
Plaintiff-Intervenor-Appellee,
Cross-Appellant,**

v.

**UNITED STATES STEEL CORPORATION, Defendant-Appellant,
Cross-Appellee.**

**No. 84–8288.**

United States Court of Appeals,
Eleventh Circuit.

April 25, 1985.

---

James T. Carney, Pittsburgh, Pa., for defendant-appellant, cross-appellee.

Peggy R. Mastroianni, Washington, D.C., for E.E.O.C.

Charles W. Whitney, Jesse P. Schaudies, Jr., Atlanta, Ga., for plaintiff-intervenor-appellee, cross-appellant.

Before KRAVITCH, JOHNSON and TUTTLE, Circuit Judges.

KRAVITCH, Circuit Judge:

Michaele Cowart Nord brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, claiming that her former employer, United States Steel (U.S.S.), discriminated against her on

---

the basis of her sex by failing to promote her and by discharging her. The court below found in favor of Nord and awarded her back pay for the time period between the date of her discharge and the date of the court's oral findings. U.S.S. appeals from the court's ruling on the issue of liability, and both parties challenge the manner in which the court determined damages.

## I. BACKGROUND

The lower court made the following findings:

In February, 1972, Nord was hired by U.S.S. as a stenographer-clerk in its Atlanta sales office.[1] She continued to work there until her termination in January, 1979.

At the time Nord was hired, the Atlanta sales office was organized into teams. A team consisted of a service representative, who performed follow-up work on sales accounts, and a stenographer-clerk, a support person who acted at the direction of the service representative. Frequently, the stenographer-clerk performed the same tasks as the service representative. While Nord worked as a stenographer-clerk, she performed both clerical duties and dealt directly with customers by soliciting and taking orders, providing price quotations, hearing complaints, and answering inquiries. Thus, she had the opportunity to undertake all of the duties performed by a service representative in addition to her duties as a clerk.

In October, 1978, the office was reorganized and Nord was reclassified as a sales-service clerk. All service representatives were reclassified as inside sales representatives. The basic duties of each position remained the same. A normal order of promotion from sales-service clerk to service representative appeared to be through the positions of service correspondent, claims correspondent, and order correspon-

---

1. Nord previously had been employed by U.S.S. at its plant in Fairfield, Alabama. She was laid off after a year and a half.

dent. Each of these jobs would provide a training ground to progress and ultimately reach the position of service representative. U.S.S. stipulated that it never gave serious thought to promoting Nord to one of these higher positions.

When Nord began working at the Atlanta sales office, all of the service representatives were male and all of the stenographer-clerks were female. At the time of her discharge, there was one female inside sales representative. By the time of Nord's trial, there were twelve inside sales representative positions, of which nine were held by males, two were held by females, and one was vacant. Donna Walker, the only female inside sales representative when Nord was terminated, testified that she had been an inside sales representative or a service representative for ten years, but had been told that her opportunities for advancement were limited. The defendant did not offer any contrary evidence or any explanation for this. From May 1, 1973, until June 1, 1979, defendant neither hired nor promoted a woman to a sales position. While Nord was employed at the Atlanta sales office, twelve individuals were promoted, hired, or transferred to sales positions, of whom only one was a female. Frederick M. Peggs, the Atlanta regional sales manager since July, 1978, testified that as of November 12, 1981, he had never received recommendations for or applications from female employees for the position of sales representative.

For the years 1972 through 1977, Nord received written evaluations of "good as most" or "above average." Her first adverse evaluation was filed in 1978 when she received a "below average" rating. Prior to receiving this adverse evaluation, Nord made two requests for promotion, one oral and one written.[2] U.S.S. did not reply to either request. Subsequent to Nord's requests for promotion, defendant filled two

positions of service correspondent and four positions of inside sales representative with males. Either of these positions would have been a promotion for Nord.

U.S.S. claims that Nord was not promoted and was eventually terminated because of her bad attitude and inability to get along with other employees. The evidence shows that Nord had one conflict with another employee named Spires. On two occasions she was transferred from one inside sales representative to another. These transfers involved two male inside sales representatives, Joseph Odishoo and Richard Estes. At trial, Odishoo and Estes testified that Nord had performed inadequately while under their supervision and that she had personality problems. In his written evaluations of this same period, however, Odishoo had rated Nord as "above average" or as "good as most" and had described her personality as "super." It was not until after Nord requested a promotion that her written evaluations became negative. Nord's last conflict with management occurred when she asked Bailey, the technical coordinator, for permission to review her personnel file. After two requests, Nord was allowed to see the file, but was told that she would be fired if any other employee made a similar request.

The court below found "two significant and interesting" factors about Nord's alleged conflict with management: first, the conflict came after she requested a promotion and received no response; and second, management was all male. The court also found that the following aspects of defendant's subjective promotion process indicated a built-in mechanism for sex discrimination: all of the management personnel were male; all of the supervisors were male and a principal factor in determining who received a promotion was the recommendation of a supervisor; there was no practice of posting job openings, rather, all

---

2. In November, 1977, Nord orally asked her office supervisor, Clarence Bailey, to allow her to be considered for promotion to service representative. On June 16, 1978, Nord made a written request to assistant office manager J.S. Henderson, Jr. that she be considered for a job as service representative or, alternatively, that she be considered for promotion to a position that would allow her maximum contact with the public. Nord testified that she made several subsequent oral requests for promotion, but the district court mentioned only two requests.

information was conveyed by word of mouth; there were no established procedures or standards governing promotion; employees were not provided with information regarding the necessary qualifications for promotion.

The court below found that defendant intentionally discriminated against the plaintiff, and awarded her $88,960 in back pay and $18,193.50 in attorney's fees, together with other costs.

## II. LIABILITY

Applying the test set out by the Supreme Court in *McDonnell-Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the lower court determined that Nord had satisfied her burden of establishing a prima facie case of sex discrimination by showing that she was a member of a group protected by Title VII, that she applied for and apparently was qualified for available positions, and that after she applied for these positions, the defendant filled the vacancies with other applicants of equal or lesser qualifications. Regarding plaintiff's qualifications for the position of inside sales representative, the court found that there was uncontroverted testimony that Nord was capable of performing, and actually had performed, many of the duties of this position. Moreover, the court found that Nord's qualifications for the positions of inside sales representative and service correspondent were not in issue because defendant had conceded that it never considered Nord for promotion. Defendant's proffered legitimate nondiscriminatory reason for not promoting plaintiff, and for ultimately firing her, was that she had a poor work performance record, a bad attitude, and personality conflicts with her supervisors and coworkers. The court found that plaintiff had successfully challenged these allegations as pretextual "and had demonstrated overwhelmingly that the less-than-satisfactory work performance reviews did not occur until after [plaintiff]

had made repeated requests to be considered for promotion and that the alleged personality and attitude problems did not exist." The court below also determined that the subjective nature of defendant's promotion policy rendered it invalid. *See Parson v. Kaiser Aluminum & Chemical Corp.,* 575 F.2d 1374 (5th Cir.1978), *cert. denied,* 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979);[3] *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972); *see also Bell v. Birmingham Linen Service,* 715 F.2d 1552 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984); *Harris v. Birmingham Board of Education,* 712 F.2d 1377 (11th Cir.1983); *Watson v. National Linen Service,* 686 F.2d 877 (11th Cir.1982).

■ Defendant claims that certain factual errors by the district court render its opinion clearly erroneous. First, defendant claims that Nord's conflict with management began before she requested a promotion. In support of this claim, defendant points to plaintiff's testimony that, from the beginning of her employment, Odishoo would frequently call her "dummy" and "dumb broad." The fact that Odishoo made sexist remarks toward plaintiff before she requested a promotion is hardly evidence that it was Nord's unpleasant personality, not sex discrimination, that caused her not to advance. Next, defendant alleges that plaintiff testified that Odishoo had been told to downgrade plaintiff's reviews several years prior to her request for a promotion. Contrary to defendant's assertion, however, plaintiff did not testify that she knew Odishoo had been instructed to downgrade her, only that Odishoo had told her that he had been so instructed.

■ Several other alleged factual errors are even less significant. For example, defendant complains that the district court was wrong in finding that "management was all male" because there was one female inside sales representative at the time of plaintiff's discharge, and inside sales

---

**3.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

representatives were classified as part of management. This technical error is of no consequence. The court was correct in its finding that all of the managers who had influence over Nord's progression were males as were all of the managers with whom she allegedly had a conflict.[4] The court also found that at the time of plaintiff's trial there were twelve inside sales representative positions, of which one was vacant, when there were actually thirteen such positions and two vacancies. This error is unimportant. Finally, the court noted that the one female inside sales representative, Walker, had been told that her potential for advancement was "limited." Defendant claims this finding ignores the fact that male inside sales representatives were also told they had limited advancement opportunities. Contrary to defendant's assertion, however, this is not a "critical finding," as Nord was claiming discrimination in advancing to the inside sales representative position, not in progressing beyond that level.

■ None of the alleged factual errors or omissions casts any doubt on the trial court's judgment. Rather, based upon the fact that the written evaluations of plaintiff rated her as a good employee before she requested a promotion and as a poor employee afterwards, the court found that the promotion request caused her to receive poor evaluations, and ultimately, resulted in her discharge. In reaching this determination, the court was in the best position to assess the credibility of the witnesses and to assess plaintiff's relationship to her coworkers both before and after the promotion requests. We find that the record fully supports the trial court's conclusion.

■ Defendant also attacks several aspects of the lower court's legal conclusions. All of these claims are without merit. First, defendant alleges that the court applied the wrong legal standard in its oral findings by treating the case as one in which there was direct evidence of discrimination, *see, e.g., Bell v. Birmingham Linen,* 715 F.2d 1552 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984), although no such evidence existed. Defendant admits, however, that this error was corrected in the court's written order. Because no mistake remains, there is no mistake to be corrected on appeal. Next, defendant complains that the court did not give adequate attention to the claim of discriminatory discharge, but rather, focused too much on the promotion issue. The lower court found that plaintiff was never promoted to a sales position because of intentional discrimination by defendant, and that a request for promotion ultimately lead to her discharge. Thus, these two claims were inextricably intertwined, and there was no need for the court to consider them separately. Finally, defendant claims that *Rowe v. General Motors,* 457 F.2d 348 (5th Cir.1972), which held that a subjective promotion policy similar to the defendant's policy violated Title VII, is inapplicable to the present case. Defendant argues that the rationale for *Rowe* was that given the historic discrimination against blacks in the South, a subjective promotion system would inevitably result in racial discrimination. Defendant then urges that "this line of cases is completely inapposite" to a sex discrimination claim because of the absence of sex discrimination in the "employment location in question." Plaintiff correctly points out that this argument ignores the fact that sex discrimination is prohibited under Title VII because women historically have been discriminated against in employment. *See* H.R.Rep. No. 238, 92nd Cong., 2nd Sess. 5 (1971), *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2141 ("Discrimination against women is no less serious than other forms of prohibited employment practices and is to be accorded the same degree of social concern given to any type of unlawful employment discrimination."). Further-

---

4. In addition, the district court was aware of the number of female inside sales representatives at various times as noted elsewhere in its opinion.

more, the *Rowe* standards have been applied in sex discrimination cases. *See, e.g., Thompkins v. Morris Brown College,* 752 F.2d 558, 565 n. 16 (11th Cir.1985); *Bell v. Birmingham Linen Services,* 715 F.2d at 1559; *Martinez v. El Paso County,* 710 F.2d 1102, 1104 n. 2 (5th Cir.1983).

We therefore conclude that the district court correctly found in favor of plaintiff on the issue of liability.

## III. DAMAGES

### A. *Background*

In its oral findings of October 14, 1983, the district court stated that "judgment will be entered for the plaintiff in this case" but that "[f]inal judgment will not enter" until the court received the information it required to assess damages and attorney's fees. Specifically, the court asked defendant to furnish it with "the compensation to which Nord would have been entitled which will run through today, October 14, 1983." At that time, the court also denied reinstatement.

Defendant subsequently submitted documents showing the wages and benefits plaintiff would have received had she been promoted to an inside sales representative instead of being discharged. The rate of pay was based upon the amount plaintiff was earning when she was terminated, supplemented by the percentage increase she would have been entitled to upon being promoted.

At a hearing on January 20, 1984, the court stated:

> From the evidence submitted I find that the plaintiff Mrs. Nord would have earned total compensation in the amount of $105,960.00.[5] That compensation or total compensation is made up of earned wages of $102,578.00 and accumulations of savings of $3,582.00.
>
> I further find that during the interval she has earned the sum of $17,000.00. The evidence does not reflect the amount of earnings that she had as a secretary at Hurtt Richardson, therefore I have

not deducted anything because no one provided me with any figure nor was it testified to at trial as to what she earned there.

> Therefore, the total amount recoverable in the case and verdict and judgment will reflect plaintiff recover the sum of $88,960.00.

On February 27, 1984, the court issued a written order awarding plaintiff $88,960.00. Judgment was also entered on that day.

Both parties appealed the remedy ordered by the court. Defendant claims that plaintiff was out of the job market for most of the time after she was discharged, and that the district court abused its discretion by ordering back pay for this period. Defendant also alleges that the court erred by not deducting from the back pay award the amount plaintiff earned while working at the Hurt-Richardson law firm, by miscalculating the amount she was paid by her husband's professional corporation, and by not deducting anything for the time plaintiff spent setting up her husband's business. Plaintiff claims that the trial court abused its discretion by basing her lost pay on a percentage of her former salary, rather than on what male inside sales representatives were paid, by awarding back pay only until the date of the trial court's oral findings, and by not ordering either reinstatement or front pay.

### B. *Participation in the Labor Market*

42 U.S.C. § 2000e–5(g) provides in pertinent part:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropri-

---

**5.** This is the exact amount reflected in defendant's calculations.

ate.... Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable....

 It is the duty of the district court, after a finding of discrimination, to place the injured party in the position he or she would have been absent the discriminatory actions. 118 Cong.Rec. 7168 (1972); *Albemarle Paper Company v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). As we stated recently in *Darnell v. City of Jasper, Alabama,* 730 F.2d 653 (11th Cir. 1984):

> We begin with what by now must be considered beyond peradventure: the basic purpose of Title VII relief is to "make whole" victims of unlawful discrimination." *Albemarle Paper Company v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975); *Franks v. Bowman Transportation Company,* 424 U.S. 747, 763, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976). To this end the Act "vest[s] broad equitable discretion in the federal courts ...." *Franks v. Bowman Transportation Company,* 424 U.S. at 763, 96 S.Ct. at 1264. Moreover, "Congress' purpose in vesting a variety of 'discretionary' powers in the courts was not to limit appellate review of trial courts or to invite inconsistency or caprice, but rather to make possible the 'fashioning of the most complete relief possible.'" *Albermarle Paper Company v. Moody,* 422 U.S. at 421, 95 S.Ct. at 2373.

*Id.* at 655. Under this policy, "back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of erradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Company v. Moody,* 422 U.S. at 421, 95 S.Ct. at 2373 (footnote omitted). A Title VII plaintiff who is unlawfully terminated, however, is required to mitigate damages by being reasonably diligent in seeking employment substantially equivalent to the

position she or he lost. *Ford Motor Company v. Equal Employment Opportunity Commission,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Here, defendant claims that plaintiff did not use reasonable diligence in seeking employment and therefore is not entitled to back pay. This is a determination of fact which is subject to the "clearly erroneous" standard of Fed.R. Civ.P. 52(a). *Marks v. Prattco,* 633 F.2d 1122 (5th Cir. Unit A 1981). Based on the record before us, we find no error.

Defendant claims that plaintiff spent her time going to school, getting married, and helping her husband set up his business. At her deposition, plaintiff gave contradictory testimony, at one point claiming that she did search for work following her termination, and at another point stating that she had not been in the market "to ask other people for employment" since January 1979. At trial, however, plaintiff testified that she had looked for work for two to two and a half years following her termination, and that she had registered with the state employment agency and had filled out applications with employers. She further testified that, despite her efforts, she was only able to secure employment for a brief period at the Hurt-Richardson law firm. Following this period of searching, she spent her time setting up her husband's practice as a psychologist with the understanding that she would be gainfully employed by that practice once it began operating.

 United States Steel had the burden of proving plaintiff's alleged lack of diligence. As the former Fifth Circuit stated in *Marks v. Prattco,* 633 F.2d 1122 (5th Cir. Unit A 1981):

> Once a plaintiff in a Title VII case has established a prima facie case and established what he or she contends to be the damages resulting from the discriminatory acts of the employer, the burden of producing further evidence on the question of damages in order to establish the amount of interim earnings or lack of diligence properly falls to the defendant. *Sias v. City Demonstration Agency,* 588

F.2d 692 (9th Cir.1978); *Sprogis v. United Air Lines,* 517 F.2d 387, 392 (7th Cir.1975).

*Id.* at 1125. Here, defendant did not submit any evidence other than plaintiff's testimony to substantiate its claim that defendant was not actually seeking substitute employment.[6] Thus, defendant left the determination of plaintiff's diligence to be decided by the court based upon its assessment of plaintiff's credibility. We do not find that the court erred in ruling in favor of plaintiff.

 First, defendant claims that plaintiff's unavailability for employment is shown by her college attendance. Defendant, however, submitted no records showing the extent of plaintiff's college attendance and there is no evidence that plaintiff was a full-time student. Moreover, plaintiff took college courses both before and after her termination; thus it is evident that plaintiff's college attendance did not foreclose her full-time employment. *Cf. Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269 (4th Cir.1985) (Title VII claimant's status as a college student was incidental to the essential question of whether he was exercising reasonable diligence in seeking similar employment where plaintiff maintained full-time employment in addition to attending school full time).[7]

 A more difficult issue is presented by the period after the two to two and one half years plaintiff actively searched for employment. The question before us is whether, after searching unsuccessfully for employment for this period, it was reasonable for plaintiff to turn her attention to setting up a business with her husband which would provide for her future employment. We hold that it was. Plaintiff unsuccessfully searched for a job for years. Rather than continue this fruitless search she sought to establish secure future employment. *Cf. Brady v. Thurston Motor Lines,* 753 F.2d 1269 (4th Cir.1985)(plaintiff who unsuccessfully searched for substantially equivalent employment for one year was justified in accepting lesser employment and going to school full time, even though he no longer actively sought employment substantially equivalent to job he lost due to discrimination; choice was "entirely reasonable"). *J.H. Rutter Rex Manufacturing Co., Inc. v. NLRB,* 473 F.2d 223, 242 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973) ("by 'lowering their sights' and accepting what might have been the best job available, the claimants were doing all that could reasonably be expected of them by way of mitigation").[8]

## C. Hurt-Richardson Earnings

 Contrary to the lower court's finding, the record does contain evidence of Nord's earnings at the Hurt-Richardson law firm. Nord admitted at trial that she earned $1,336.00 at Hurt-Richardson as verified by her 1981 tax return which was submitted into evidence. Plaintiff claims that any error is *de minimis* in light of the amount of the final judgment and, therefore, should be ignored by this court in light of the trial court's broad discretion. This discretion, however, does not permit errors of law, no matter how small. The law explicitly states that interim earnings

---

6. For example, defendant might have submitted plaintiff's state employment agency records or her school records.

7. In a letter submitted to this court after oral argument, defendant argues that plaintiff was not entitled to back pay for the period following her discharge from Hurt-Richardson under the reasoning adopted by the Fourth Circuit in *Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269 (4th Cir.1985) (plaintiff must use reasonable diligence in maintaining subsequent employment in order to maintain right to back pay). We need not reach the merits of this claim because

it was never raised before the district court and thus, *a fortiori,* the defendant failed to sustain its burden.

8. "Section 706(g) was 'expressly modeled' on the analogous remedial provisions of the National Labor Relations Act (NLRA), § 10(c), 49 Stat. 454, as amended, 29 U.S.C. § 160(c).... The principles developed under the NLRA generally guide, but do not bind, courts in tailoring remedies under Title VII." *Ford,* 102 S.Ct. at 3062–63 n. 8 citing *Albemarle,* 422 U.S. at 419, 95 S.Ct. at 2372 (other citations omitted).

shall be deducted. 42 U.S.C. § 2000e-5(g). Thus, the lower court erred in not deducting the $1,336.00 from plaintiff's back pay award and we remand for correction of this error.

### D. Earnings from Husband's Business

Defendant claims that the court erred in only subtracting $17,000.00 for plaintiff's earnings from her husband's professional corporation when she actually earned $18,000.00. We find that both the defendant's and the district court's calculations are equally inaccurate. Plaintiff testified that she began working for her husband on May 1, 1982, and continued to work for him, earning $1,000.00 per month. Defendant claims that since there were eighteen months between May 1, 1982, and October 31, 1982, $18,000.00 should have been deducted. The determinative date, however, is October 14, 1983, the date that the court ended the back pay period. On October 14, only seventeen and one-half months had elapsed since plaintiff began working for her husband. Therefore, only $500.00 need be subtracted from the plaintiff's award. As discussed *infra*, however, the back pay period was impermissibly cut short and must be increased on remand. Likewise, the amount deducted for work at Dr. Nord's business must also be increased.[9]

 Next, defendant argues that the court should have deducted $1,000.00 per month for the six to eight months during which plaintiff helped her husband set up his business. We find this claim to be without merit. Plaintiff points out that she was not paid for this work and, indeed, the corporation was not receiving any income at that time. A district court is not required to calculate and deduct the value of services the claimant performed without compensation.

### E. Calculation of Salary Plaintiff Would Have Received

 The trial court accepted defendant's calculations of how much plaintiff would have been paid had she been promoted to an inside sales representative instead of being discharged. Defendant based this calculation on the ten percent raise plaintiff would have received at the time of promotion,[10] and two subsequent five percent increases. Plaintiff claims that similarly situated male inside sales representatives were earning $1,400.00 to $2,400.00 more than plaintiff would have earned according to defendant's calculations. Thus, plaintiff argues, the calculations accepted by the court perpetuate defendant's traditional practice of paying lower salaries to females who do work identical to that of males. Defendant replies that the same formula was used to determine male employees' salaries. Moreover, all of the males that plaintiff compares herself with had more experience than plaintiff.

Based on the record before us, we conclude that the court did not abuse its discretion in determining that the defendant's calculations accurately reflected what an employee in Nord's position would have been paid upon promotion to the position of inside sales representative, regardless of that employee's sex. We further conclude that the males Nord compared herself to were not similarly situated with her.

### F. Back Pay, Reinstatement, and Front Pay

 Under the "make whole" rationale discussed in section III B, *supra*, victorious Title VII plaintiffs are presumptively entitled to back pay. *Marks*, 633 F.2d at 1125; *McCormick v. Attala County Board of Education*, 541 F.2d 1094, 1095 (5th Cir.1976). Here, the court grant-

**9.** We note that defendant appears to have calculated plaintiff's lost wages based upon the back pay period terminating on October 31, 1983. On remand, we assume defendant will correctly calculate both back pay and, if applicable, front pay using the dates given to it by the district court.

**10.** Defendant presented testimony that this was the maximum possible increase for a promotion that did not involve physical relocation.

ed back pay but ended the back pay period on the date of the court's oral findings, over four months before judgment was entered. *See* Fed.R.Civ.P. 58. This was contrary to the "make whole" purpose of Title VII, and therefore constitutes error. *See Patterson v. American Tobacco Company*, 535 F.2d 257, 269 (4th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976) (back pay period extends until date of judgment); *Gonzalez v. Markle Manufacturing Company*, 487 F.Supp. 1088, 1092 (W.D.Tex.1980), *aff'd*, 614 F.2d 1083 (5th Cir.1980) (plaintiff entitled to back pay until date of judgment not date of magistrate's report). Hence, the back pay period must be extended until February 27, 1984.

 Title VII claimants are also presumptively entitled to reinstatement under the "make whole" policy. *Darnell*, 730 F.2d at 655. *See also Garza v. Brownsville Independent School District*, 700 F.2d 253, 255 (5th Cir.1983)(reinstatement or hiring preference remedies are to be granted in all but the unusual cases; fact that the employer changed its procedures to eliminate future discrimination is not such an unusual circumstance nor is the fact that the employee now holds a job almost as good as the one she lost due to discrimination); *Walker v. Ford Motor Company*, 684 F.2d 1355, 1362–63 n. 9 (11th Cir.1982); *McCormick v. Attala City Board of Education*, 541 F.2d 1094, 1095 (5th Cir.1976)("Once discrimination is

proved, a presumption of entitlement to back pay and individual injunctive relief arises. The burden of proof then shifts to the employer to show by clear and convincing evidence that the discriminatee would not have been hired absent discrimination."). In the present case, the district court gave no reason for denying plaintiff reinstatement. Absent a discussion of the court's reasons, we are unable to perform our role of appellate review. Fed.R.Civ.P. 52(a). *See Thompkins v. Morris Brown College*, 752 F.2d 558, 565 (11th Cir.1985); *Lee County Branch of NAACP v. City of Opelika*, 748 F.2d 1473, 1480 (11th Cir. 1984); *Complaint of Ithaca*, 582 F.2d 3, 4 (5th Cir.1978). Accordingly, we must remand for the district court to either grant reinstatement or, if the court determines reinstatement is inappropriate, to set out the extraordinary circumstances in this case which cause it to reach that conclusion.[11]

As an alternative to reinstatement, the court could have ordered front pay. *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358 (5th Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). *See also Thompson v. Sawyer*, 678 F.2d 257, 292 (D.C.Cir.1982); *Fitzgerald v. Sirloin Stockade Inc.*, 624 F.2d 945 (10th Cir.1980).[12] On remand, the court also should consider this option. In doing so, the court must bear in mind that awards of front pay, like other relief under Title VII, must be fashioned in a manner to "further

---

**11.** The district court already has determined that, absent discrimination, plaintiff would have become an inside sales representative. *See Garza*, 700 F.2d at 256. We note, however, that the parties have stated in their briefs that the Atlanta sales office has been closed, although the record does not state the exact date of the closure. Thus, reinstatement at the Atlanta sales office apparently is no longer possible. Reinstatement, however, may be possible at another U.S.S. office. Although plaintiff should not be placed in a better position than she would have been absent the discrimination, she is entitled to whatever employment opportunities the other inside sales representatives were given when the Atlanta sales office closed. Thus, if the other inside sales representatives were laid off at the

time the Atlanta sales office was closed, then defendant's period of liability for either front pay or reinstatement ended at the time of the closure. If, however, the other Atlanta inside sales representatives were given the opportunity to transfer to other offices, plaintiff must, likewise, be given this option.

**12.** Defendant claims that plaintiff is not entitled to front pay because she did not specifically request that remedy before the district court. The court, however, has wide discretion to consider various options. *See Fitzgerald*, 624 F.2d at 957 (front pay appropriate even though plaintiff did not request reinstatement).

the goals of ending illegal discrimination and rectifying the harm it causes." *Thompson v. Sawyer*, 678 F.2d at 292.[13]

For the foregoing reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

**13.** Again, as discussed in note 11, *supra,* front pay may be appropriate only until the date the Atlanta sales office was closed, depending on the treatment of the other inside sales representatives at that time. If reinstatement is ordered, plaintiff would be entitled to front pay from February 27, 1984, until the date of reinstatement, with appropriate deductions for other wages earned during that period. *See James,* 559 F.2d at 358. This period may be considered either "front pay" or "back pay." *Id.*