**Muriel E. KRASZEWSKI; Daisy O. Jackson; Wilda Tipton, on behalf of themselves and all other persons similarly situated, Plaintiffs–Appellees/Cross–Appellants,**

v.

**STATE FARM GENERAL INSURANCE COMPANY; State Farm Mutual Automobile Insurance Company; State Farm Fire and Casualty Company, Defendants–Appellants/Cross–Appellees.**

Nos. 88–15337, 88–15399.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1989.

Decided Aug. 31, 1990.

Guy T. Saperstein, Mari Mayeda, Farnsworth, Saperstein & Seligman, Oakland, Cal., for plaintiffs-appellees/cross-appellants, Muriel E. Kraszewski, et al.

Raymond L. Wheeler, Kirby Wilcox, Erica B. Grubb, Debra L. Hamilton, Morrison & Foerster, San Francisco, Cal., for defendants-appellants/cross-appellees, State Farm Ins. Companies.

Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, Donna J. Brusoski, E.E.O.C., Washington, D.C., for E.E.O.C. as amicus curiae.

Before HUG, FARRIS and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Plaintiffs brought a class action in United States District Court for the Northern District of California, alleging that defendant State Farm General Insurance Company ("State Farm") engaged in statewide discrimination with respect to the recruitment, hiring and training of women for sales agent positions, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Following trial, the district court ruled that State Farm was liable for classwide sexual discrimination. The court found that women who attempted to become Trainee Agents were "lied to, misinformed, and discouraged in their efforts to obtain the entry level sales position." *Kraszewski v. State Farm General Ins. Co.,* 38 Fair Empl.Prac.Cas. (BNA) 197, 257, 1985 WL 1616 (N.D.Cal.1985). These findings as to general liability were issued more than two years after the trial, a delay due in substantial part to the judge's prolonged illness. The court also ordered the use of individual *"Teamster"* hearings to determine individual liability and damages.[1] *Kraszewski v. State Farm General Ins. Co.,* 41 Fair Empl.Prac.Cas. (BNA) 1088, 1089, 1986 WL 11746 (N.D.Cal. 1986).

After the court's order requiring individual hearings, the parties settled nearly every damage question. They agreed, however, that each plaintiff would be required to establish her entitlement to relief in a separate, non-judicial proceeding before one of seven special masters. The parties also left open the proper termination date for back pay liability: they asked the district court to determine whether State Farm's back pay liability should terminate on the date the court approved the consent decree or on the date each individual plaintiff ultimately receives a judgment in her favor. This appeal involves only the issue of the proper termination date for back pay liability.

Following an oral hearing, the district judge held for the plaintiffs, concluding that back pay liability should continue to accrue until the date of individual judgment or settlement. He did so in an extremely thorough, thoughtful and well-reasoned opinion, after weighing all the interests involved and balancing them carefully. The court also decided to subtract one year's back pay from each individual's potential judgment, although neither party had suggested such a compromise. The reason for the deduction was that the judge did not want State Farm to bear the in-

---

1. In *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 361, 97 S.Ct. 1843, 1867–68, 52 L.Ed.2d 396 (1977), the Supreme Court held that individual hearings are the preferred method of determining damages in Title VII cases. Since *Teamsters* such hearings have become routine.

creased liability attributable to the delay caused by his illness.

State Farm appeals from the part of the court's order providing that back pay will accrue on a case-by-case basis until each individual receives a judgment or settlement. Plaintiffs cross-appeal from the part of the order shortening the individual accrual periods by one year. We uphold the district court's determination that back pay continues to accrue until the date of individual judgment, but conclude that the court erred in subtracting one year's damages from each individual's potential back pay award. We therefore affirm in part, reverse in part, and remand.

■ In choosing the date of individual judgment as the proper termination date for back pay liability, the district judge did not abuse his discretion. *See E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir.1989) (district court's calculation of a back pay award is reviewed only for an abuse of discretion). In fact, he applied the rule courts must generally follow in Title VII cases. In *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), the seminal case in the field, the Supreme Court explained that the principal objectives of Title VII are to eliminate the vestiges of employment discrimination and to make persons whole for injuries suffered due to such discrimination. The Court directed that "[t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Id.* at 419–20, 95 S.Ct. at 2372–73 (quoting *Wicker v. Hoppock*, 6 Wall. 94, 99, 73 U.S. 94, 18 L.Ed. 752 (1867)). Moreover, according to the Court:

> Congress' purpose in vesting a variety of 'discretionary' powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but, rather *to make possible the 'fashion[ing] [of] the most complete relief possible.'*

*Id.* 422 U.S. at 421, 95 S.Ct. at 2373 (emphasis added).

Since *Albemarle*, the Supreme Court and lower courts have, as a matter of course, awarded back pay relief to plaintiffs, and,

also as a matter of course, have granted that back pay until the date of judgment. Such relief has uniformly been viewed as necessary to put the victim in the place he would have been—to make him whole. Thus in *Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir.1986), we held, "absent compelling circumstances, when an employer has refused to hire an employee in violation of the employee's rights under Title VII, *the court should compute the back pay award from the date of the discriminatory act until the date of the final judgment.*" (emphasis added). In *E.E.O.C. v. Enterprise Ass'n Steamfitters Local No. 638*, 542 F.2d 579, 590 (2nd Cir. 1976), *cert. denied sub nom. Rios v. Enterprise Ass'n Steamfitters, Local No. 638*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977), the Second Circuit reversed the district court's termination of its back pay award on the date it ordered injunctive relief, since that date was inconsistent with the "make whole" purpose of back pay. The court stated,

> [o]bviously, the injunctive relief did not provide for immediate entry into the A Branch for all identifiable victims of past discrimination (much less immediate job placement of those who had been denied equal job referrals). It is the date of actual remedying of discrimination, rather than the date of the district court's order, which should govern.

*Id.* The Sixth Circuit reversed a district court order that terminated back pay when the employer ceased its general policy of discrimination. The court explained that "[g]enerally, where an employer has discriminatorily refused to hire an employee, contrary to that employee's rights under Title VII, an award of back pay will be computed from the date of first refusal until final judgment." *E.E.O.C. v. Monarch Machine Tool Co.*, 737 F.2d 1444, 1453 (6th Cir.1980). The Eleventh Circuit, in *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir.1985), similarly concluded that the district court erred by ending back pay on the date of the court's oral findings, four months before judgment was entered. Terminating back pay prior to judgment was considered to be "con-

trary to the 'make whole' purposes of Title VII." *Id. Accord, Gonzalez v. Markle Manufacturing Co.,* 487 F.Supp. 1088, 1092 (W.D.Tex.) (plaintiff entitled to back pay until date of judgment not date of magistrate's report), *aff'd,* 614 F.2d 1083 (5th Cir.1980); *Patterson v. American Tobacco Co.,* 535 F.2d 257, 269 (4th Cir.) (back pay extends until the date of judgment), *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976); *Hartman v. Wick,* 678 F.Supp. 312, 336 (D.D.C.1988) ("In keeping with the remedial, make-whole purpose of back pay, the cut-off date of each back pay award will be the day on which the award is approved for the particular claimant."). The district court's approval of the consent decree provides no more relief for an individual claimant (other than the name parties) than did the order granting injunctive relief in *Enterprise,* the court's oral findings in *Nord,* or the employer's cessation of its discriminatory policy in *Monarch.* In the case before us no individual claimant will have a right to *any* relief until she obtains an individual judgment of liability in the non-judicial proceedings. The date of that judgment is the date on which State Farm's discriminatory practices will be remedied as to the individual plaintiff. Thus, unless there is a compelling reason for deviating from the general rule here, the district court's order must be affirmed.

We recognize that, as State Farm emphasizes, this is a case in which a formula has been adopted for resolving most damage issues, and we acknowledge that a logical argument can be made for a uniform termination date in such cases. However, we are not persuaded by that fact that the district court erred when it concluded that no compelling reason existed for departing from the general rule that back pay should continue to accrue until the date of judgment.[2] We also recognize that, as State Farm argues, awarding back pay until the date of individual judgment will result in some inter-claimant inequity. However, this is no different than in the ordinary back pay case. Any time an employer has discriminated against more than one employee there is the possibility that one claimant may settle early while another may go to trial, or that different claimants may have different trial dates. Thus, under the well-established make-whole rule, there is always the possibility that one claimant will receive more back pay than another simply by virtue of the timing of the ultimate settlements or judgments.

■ Title VII grants a district court broad discretion to formulate a remedy for victims of unlawful discrimination. To the extent the district court's power is limited, it is because the court has an obligation to

2. State Farm divides the Title VII cases involving class actions into "pure formula relief" cases and "individualized hearing" cases, and argues that in both courts have terminated back pay before final judgment. State Farm characterizes the instant suit as a "hybrid," since the parties' consent decree provides for formula-based payments to be made to class members whose entitlement is determined through individualized hearings. We do not find the pure formula cases such as *Hameed v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local Union 396,* 637 F.2d 506 (8th Cir. 1980), to be apposite. There may well be reasons not to continue back pay accrual until judgment when the monetary effects of discrimination are determined on a classwide basis and then divided *pro rata* among the class members. State Farm cites only two "individualized hearing" cases in support of its proposition. State Farm first notes that in *Association Against Discrimination in Employment, Inc., v. City of Bridgeport,* 647 F.2d 256, 289 (2nd Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982), the court terminated back pay before final judgment either on the date

that a claimant was actually hired or on the date that a claimant "ceased or failed to meet any of the City's requirements ... or ceased to have interest, whichever is earlier." We find this holding perfectly consistent with the general rule in Title VII cases of awarding back pay until the harm is fully remedied. A claimant ceases to suffer damages when the employer offers him the job he sought or when he becomes unqualified to hold the position or is no longer willing to accept it. The second case State Farm cites is *Stewart v. General Motors Corp.,* 542 F.2d 445, 454 (7th Cir.1976), *cert. denied,* 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977), in which the court, without explanation, provided for the termination of back pay on the date the district court entered its decree. The opinion does not reveal whether or not this was the termination date the plaintiffs requested or even whether plaintiff agreed or disagreed with the date ordered by the court. In any event, we agree with the district court below that *Stewart,* which was decided before *Teamsters* and most of the other relevant cases, is not in line with present authority.

fashion the most complete relief possible. *See Albemarle*, 422 U.S. at 418, 95 S.Ct. at 2372 ("the [district] court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future"). State Farm argues that in this case the district judge failed to exercise his discretion. It claims that the judge concluded that he was required to rule for plaintiffs. State Farm simply misreads the district judge's opinion. The district court carefully considered a number of reasons proffered by State Farm for departing from the general rule of awarding back pay until judgment and, after weighing all the facts and circumstances, found those reasons not to be compelling. *See Thorne*, 802 F.2d at 1136 (requiring a compelling reason to justify not awarding back pay until the date of final judgment). When a judge ultimately concludes that the law dictates a particular result, that does not mean that in the process of doing so he has not exercised his discretion. However, once that discretion has been exercised, and the judge has reached certain determinations, the law may indeed tell him what the final resolution must be. Here, having determined in his discretion—which must be guided by prior Title VII rulings—that State Farm's reasons were not compelling, the district court properly applied the general rule.

■ The court did err, however, in deducting one year's back pay for each claimant to account for the delay caused by the judge's illness. The Supreme Court has held that the costs of delay not attributable to either the employer or the employee are to be borne by a wrongdoing employer rather than a wronged employee. *See N.L. R.B. v. J.H. Rutter–Rex Manufacturing Co.*, 396 U.S. 258, 264–66, 90 S.Ct. 417, 420–22, 24 L.Ed.2d 405 (1969). While *Rutter–Rex* involved the National Labor Relations Act ("NLRA"), as amended, 61 Stat. 136, 147, 29 U.S.C. § 141 *et seq.*, we find the rules to be equally applicable in Title VII cases. The remedial provisions of Title VII were modeled on the NLRA, *see Ford*

*Motor Co. v. E.E.O.C.*, 458 U.S. 219, 226 n. 8, 102 S.Ct. 3057, 3062–63 n. 8, 73 L.Ed.2d 721 (1982); *Albemarle*, 422 U.S. at 419, 95 S.Ct. at 2372–73, and the purposes behind the back pay provisions of each statute—to make employees whole and to deter future employer misconduct—are similar. We note that the Supreme Court has cited *Rutter–Rex* with approval in at least one Title VII case, *see Franks v. Bowman Transportation Co.*, 424 U.S. 747, 769, 96 S.Ct. 1251, 1266, 47 L.Ed.2d 444 (1976), although on a different if related point, and that the Tenth Circuit has concluded, as we do here, that the rule of *Rutter–Rex* applies in Title VII actions. *See United States v. Lee Way Motor Freight Inc.*, 625 F.2d 918, 932–33 (10th Cir.1979). In reducing each individual's back pay award by one year to avoid "penalizing" State Farm for the court's delay, the district court impermissibly shifted the burden of the delay to the wronged employees. Accordingly, we reverse that portion of the court's order.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.