Rhonda Ann LATHEM, Plaintiff-Appellee,

v.

DEPARTMENT OF CHILDREN AND YOUTH SERVICES, and its officers and agents, Defendant-Appellant.

Rhonda Ann Lathem, Plaintiff-Appellee,

v.

Department of Children and Youth Services, and its Officers and Agents, Donald Nix, Defendants-Appellants.

Nos. 97-9307, 98-8223.

United States Court of Appeals,

Eleventh Circuit.

April 14, 1999.

Appeals from the United States District Court for the Northern District of Georgia. (No. 4:95-CV-302-HLM), Harold L. Murphy, Judge.

Before HATCHETT, Chief Judge, BIRCH, Circuit Judge, and KEITH[*], Senior Circuit Judge.

HATCHETT, Chief Judge:

Appellee Rhonda Lathem successfully sued appellant Georgia Department of Juvenile Justice, f/k/a Department of Children & Youth Services (DCYS) for Title VII sex discrimination. DCYS appeals two of the district court's evidentiary rulings, the district court's denial of its motions for judgment as a matter of law and its grant of back pay and costs. We affirm.

I. BACKGROUND

DCYS hired Lathem as a secretary in August 1985. In July 1987, Lathem began working as a part-time intake officer for the juvenile court. In 1992, Lathem met Justin Cary, a juvenile client of DCYS's whom a court later emancipated. Lathem helped Cary secure housing, allowed him to stay at her house on Christmas Eve, provided him with meals and permitted him to use her car at least once. Cary and Hoyt

---

[*]Honorable Damon J. Keith, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

Beavers, another juvenile DCYS client, stayed at Lathem's house on several occasions in January 1993. DCYS's policy prohibited its employees from becoming personally involved with DCYS clients.[1]

In March 1993, Don Nix, the district director for DCYS, initiated an investigation of Lathem after Lathem's supervisor, Terry Waits, reported that Beavers's father had complained about his son and Cary spending too much time with Lathem. Nix arranged a meeting to discuss the complaint with Lathem and Waits. Lathem initially denied having a personal relationship with the boys and refused to answer some questions that Nix posed to her. Nix then referred the matter to Lew Brendle, a DCYS investigator. Lathem told Brendle that she had done nothing wrong and again refused to answer some of the questions asked of her. Brendle informed Lathem that, because of her failure to answer his questions, DCYS would require her to take a polygraph examination. The next day, during the preliminary interview with the polygraph examiner, Lathem admitted that she had lied to Nix when he questioned her about her relationship with Cary and Beavers. The examiner then called Brendle in to speak with Lathem. Lathem again admitted she let the boys stay at her house on several occasions. Brendle prepared an internal investigation report for Nix detailing his findings regarding Lathem's misconduct. In June 1993, apparently after Brendle issued his report, Nix nevertheless gave Lathem a favorable evaluation and recommended her for a merit increase. On October 29, 1993, however, Nix suspended Lathem with pay, citing Lathem's relationship with Cary and Beavers and her "failure to cooperate" with a DCYS investigation. DCYS terminated Lathem's employment on January 15, 1994.

Lathem filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and Georgia's Commission on Equal Opportunity (CEO), alleging that DCYS discriminated against her based on sex because DCYS had not terminated Larry Smith, a male employee whom she contended was similarly-situated and had committed more egregious violations of DCYS's anti-fraternization rule. Smith was a DCYS unit director and was Lathem's direct supervisor. In 1987, Shirley McGarity reported to Nix

[1]The parties debate whether Cary was a DCYS client during his emancipation. The parties do not dispute that Beaver was a DCYS client when he stayed at Lathem's house.

that Smith was having an inappropriate relationship with her daughter, Rhonda Jones, a DCYS client who was then fifteen years old.[2] McGarity saw Smith and Jones sitting in a car together, which was a violation of DCYS policy. Nix confronted Smith about these charges, and Smith denied the charges.[3] According to DCYS's version of the events, Nix then requested that McGarity give him names of people with whom he could speak regarding her allegations of Smith's misconduct. DCYS claimed that McGarity never contacted Nix with any follow-up information to counter Smith's denial of the allegations, and this was the reason that Nix did not initiate an official investigation of Smith. Lathem claims that McGarity did speak with Nix again after the initial allegation, but that DCYS did not begin any investigation regarding the relationship.

Several months later, DCYS investigated Smith when several DCYS staff members accused him of additional serious misconduct, including having a sexual relationship with juvenile clients, possessing pornographic material, wiretapping, engaging in arson for hire, smuggling drugs and failure to perform his job duties. Brendle headed the investigation and ultimately uncovered evidence of Smith's misconduct. Although DCYS initially suspended Smith with pay while the investigation was underway, DCYS later reinstated him and transferred him to the Rome, Georgia DCYS office. A short time later, Smith voluntarily resigned. DCYS contends that Smith resigned while the investigation was still underway, and that if Smith had not resigned, DCYS would have taken disciplinary action against him, perhaps terminating his employment. Lathem, on the other hand, asserts that after DCYS transferred Smith to the Rome office, Nix informed her and other employees that the investigation of Smith was over.

The EEOC and the CEO both investigated Lathem's complaint.[4] The CEO report concluded that reasonable cause did not exist to believe that DCYS violated the Fair Employment Practices Act of 1978.

---

[2]Nix, who headed the disciplinary proceedings against Lathem, was Smith's direct supervisor.

[3]Notably, Smith later married Jones.

[4]Lathem contends that the investigators failed to interview important witnesses and make specific findings regarding her case.

*See* Ga.Code Ann. § 45-19-29.  The EEOC also rendered a no-cause determination and issued Lathem a right-to-sue letter on January 19, 1995.

## II. PROCEDURAL HISTORY

On September 18, 1995, Lathem filed a Title VII action alleging that DCYS engaged in sex discrimination through disparate discipline, and also alleging various state law claims.  On November 1, 1996, the district court denied DCYS's motion for summary judgment as to the Title VII claim, but dismissed Lathem's pendent state law claims.  The district court also denied DCYS's motion for reconsideration of the summary judgment ruling.  A jury trial commenced.  During trial, the district court denied DCYS's motion for judgment as a matter of law, and also denied DCYS's motion to introduce Lathem's no-cause determinations into evidence.

During trial, Lathem testified regarding DCYS's discipline of another male employee, Mark Reed, whom she alleged engaged in conduct similar to Lathem's.  The pretrial order contained Lathem's allegation that in 1990 or 1991 Reed had a personal relationship with a DCYS client, but that DCYS did not terminate or even discipline Reed.  At trial, DCYS presented evidence that the juvenile who stayed with Reed was not a DCYS client in 1991 and part of 1990.  Lathem testified on rebuttal that the relationship also occurred in 1989.  The juvenile that Reed had the relationship with was a DCYS client in 1989.  Lathem also testified regarding Smith's inappropriate conduct toward her and DCYS clients.  Lathem testified that Smith met with female clients behind closed doors in violation of DCYS policy, made inappropriate comments to her and showed her pornographic pictures.

The jury returned a verdict for Lathem on the Title VII claim for $400,000.  The district court reduced the award to $300,000 (the statutory limit) and denied DCYS's renewed motion for judgment as a matter of law, or in the alternative, for a new trial.  In a subsequent hearing, the district court awarded Lathem back pay and costs.

## III. ISSUES

4

The issues are whether the district court erred in: (1) refusing to admit the EEOC's and CEO's no-cause determinations into evidence; (2) denying DCYS's requests for judgment as a matter of law, or in the alternative, a new trial; (3) admitting Lathem's testimony regarding discriminatory acts that DCYS alleges occurred outside the statute of limitations for a Title VII action; (4) admitting Lathem's testimony that allegedly contradicted the pretrial order and her pleadings; (5) awarding Lathem back pay; and (6) granting Lathem costs.

## IV. DISCUSSION

A.    Evidentiary determinations

DCYS first argues that the district court abused its discretion in refusing its request to admit the EEOC's and the CEO's no-cause determinations. Although trial courts admit EEOC determinations in bench trials, this liberal admissibility rule does not apply to jury trials.[5] *See Walker v. NationsBank of Florida,* 53 F.3d 1548, 1554 (11th Cir.1995). Instead, the district court must make the admissibility determination on an individual basis, considering the evidence's probative value and the danger of unfair prejudice. *See Barfield v. Orange County,* 911 F.2d 644, 650 (11th Cir.1990), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991). In its request to have the reports admitted, DCYS argued that failure to admit the reports would prejudice it because in both reports Lathem alleged that Smith, rather than Smith and Reed, had engaged in similar misconduct but received disparate discipline. Lathem, however, argued that the district court should not admit the reports because the EEOC and CEO failed to interview certain witnesses and review certain documents during its investigation. District courts have broad discretion with respect to the admissibility of evidence. *See Hines v. Brandon Steel Decks, Inc.,* 886 F.2d 299, 302 (11th Cir.1989), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1587, 118 L.Ed.2d 305 (1992). Because Lathem offered a legitimate reason why the reports may have unfairly prejudiced her case, we find that the district court did not abuse its discretion when it refused to admit in this jury trial the EEOC's and CEO's no-cause determinations.

---

[5]We hold the same rule applies to the determinations of state employment discrimination agencies.

DCYS also argues that the district court erred in allowing Lathem to introduce evidence of sexual harassment and discriminatory discipline that occurred more than 180 days before Lathem filed her EEOC complaint. A plaintiff may recover damages under Title VII only for known unlawful practices that occurred within 180 days of filing the complaint. *See* 42 U.S.C. § 2000e-5(e)(1) (1994). A trial court may exclude relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. DCYS argues that Lathem's testimony that Smith made inappropriate comments to her and showed her pornographic materials—presumably more than 180 days before she filed her complaint—was inflammatory and prejudicial and that the jury may have used this testimony to justify its verdict. During jury instructions, however, the district court clarified that the jury should only decide issues of discrimination related to Lathem's termination. A curative instruction may render prejudicial remarks harmless. *See United States v. Thomas,* 62 F.3d 1332, 1343 (11th Cir.1995), *cert. denied,* 516 U.S. 1166, 116 S.Ct. 1058, 134 L.Ed.2d 202 (1996). Accordingly, DCYS cannot show the admission of this evidence prejudiced it.

DCYS next argues that the district court abused its discretion when it allowed Lathem to present evidence of disparate treatment that allegedly contradicted claims she made in her pleadings and the pretrial order. DCYS argues that when Lathem testified on rebuttal that a former DCYS client was living at Reed's house in 1989, she effectively amended the pretrial order, which stated that the client stayed at Reed's house in either 1990 or 1991. DCYS argues that the disparity prejudiced it because at trial Lathem erroneously contended that Reed was another male comparator. The juvenile accused of living with Reed was not a DCYS client in late 1990 or 1991; if the client stayed with Reed during this time period, Reed did not violate DCYS policy, and therefore, the comparison was invalid. We hold that DCYS's argument is meritless because: (1) Reed was a relatively minor character in the trial, (2) Smith was the dominant comparator, and (3) a witness may err when testifying regarding dates of events that occurred several years prior. Opposing counsel can discuss these discrepancies with the jury and can urge the jury to consider the testimony when

assessing the witness's credibility. Moreover, DCYS failed to object to the testimony, or make a motion to strike it at trial. Accordingly, the district court did not err when it allowed Lathem to testify regarding Reed.

B.        Judgment as a Matter of Law

DCYS argues that Lathem did not produce sufficient evidence to support her claim of intentional discrimination. The seminal disparate treatment case, *McDonnell Douglas Corp. v. Green,* articulated the procedure for a plaintiff to put forth a *prima facie* case of discrimination. 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). Title VII plaintiffs establish a *prima facie* case when they demonstrate: (1) that the plaintiff belongs to a class protected under Title VII; (2) that the plaintiff was qualified for the job; and (3) that the misconduct for which the employer discharged the plaintiff was the same or similar to what a similarly situated employee engaged in, but that the employer did not discipline the other employee similarly. *See Holifield,* 115 F.3d at 1562. DCYS asserts that the district court erred through misapplication of element three of the *prima facie* case.

DCYS claims that if two employees have different job titles, they are not similarly situated, and accordingly, Lathem cannot prove discriminatory intent through differential treatment. If two employees are not "similarly situated," the different application of workplace rules does not constitute illegal discrimination. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir.1984). The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies. *See Nix,* 738 F.2d at 1186. "When an individual proves that he was fired but one outside his class was retained although both violated the same work rule, this raises an inference that the rule was discriminatorily applied...." *Nix,* 738 F.2d at 1186. As the district court noted, DCYS offered no evidence that Smith and Lathem operated under different workplace rules or policies.

7

Because DCYS subjected Smith and Lathem to the same employment policies, we must examine whether their conduct and respective punishments were similar. The most important factors in the analysis are the nature of the offenses committed and the punishments imposed. *See Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.1998). In this case, DCYS accused Smith and Lathem of the same conduct: having a relationship with a minor client and failing to cooperate in the subsequent investigation. DCYS claims that it transferred, rather than fired, Smith because it did not want to grant him further "paid vacation" in the form of paid suspension. DCYS fails to explain, however, why DCYS did not immediately terminate Smith once it substantiated the misconduct allegations. Further, DCYS does not explain why it considered discipline short of termination in the Smith case or why it failed to investigate the initial misconduct allegations against Smith. Accordingly, the district court found correctly that Smith and Lathem were similarly situated.

DCYS next argues that Lathem did not have sufficient proof of pretext to survive judgment as a matter of law. Once a plaintiff establishes a *prima facie* case in a disparate treatment action, the employer must provide a specific, legitimate nondiscriminatory reason for disciplining the employees differently. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254-55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Intentional discrimination is an issue of fact. *See Pullman-Standard v. Swint,* 456 U.S. 273, 286 n. 16, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). We may reverse a finding of intentional discrimination only if it is clearly erroneous. *See Lincoln v. Board of Regents,* 697 F.2d 928, 940 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). "[R]ejection of the employer's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination...." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir.1997), *cert. denied,* --- U.S. ----, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). "[A] plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged actions." *Combs,* 106 F.3d at 1529. At trial, DCYS proffered two reasons for the discriminatory

8

treatment. First, DCYS stated that it subjected Smith and Lathem to different work rules. As mentioned, DCYS offered no evidence to support this contention. Second, DCYS argued that it did not treat Smith and Lathem differently. As previously explained, this assertion is also not credible. Therefore, the district court did not err in refusing DCYS's requests for judgment as a matter of law.

C.      Back Pay

DCYS argues that the district court erred in awarding Lathem back pay because she suffered from a disability during the back pay period. Generally, a Title VII plaintiff can recover back pay only for the period the plaintiff is "available and willing to accept substantially equivalent employment" elsewhere; courts exclude periods where a plaintiff is unavailable to work, such as periods of disability, from the back pay award. *See Miller v. Marsh,* 766 F.2d 490, 492 (11th Cir.1985). Successful Title VII claimants, however, are presumptively entitled to back pay. *See EEOC v. Massey Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244, 1251 (11th Cir.1997). Courts resolve uncertainties in back pay in favor of the discrimination victim. *See Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 260-61 (5th Cir.1974), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). The district court, after reviewing all the evidence, specifically found that DCYS's conduct caused Lathem's disability and that this disability precluded her from obtaining other employment. Accordingly, we hold that a Title VII claimant is entitled to an award of back pay where the defendant's discriminatory conduct caused the disability. *See, e.g., Sowers v. Kemira, Inc.,* 701 F.Supp. 809, 826 (S.D.Ga.1988) (finding that excluding a back pay award based upon a plaintiff's disability would be unfair when the defendant caused the disability). Therefore, the district court did not err in awarding Lathem back pay.

DCYS also argues that the district court abused its discretion when it determined that Lathem exercised reasonable diligence in seeking substantially equivalent employment. Title VII requires plaintiffs to mitigate their damages through reasonably diligent efforts to seek employment that is substantially equivalent. *See Nord v. United States Steel Corp.,* 758 F.2d 1462, 1470 (11th Cir.1985). Lathem testified

that she applied unsuccessfully for comparable employment with numerous private businesses. DCYS argues that Lathem should also have applied at other state government agencies because secretarial positions were open during the relevant period. DCYS asserts that Lathem could have obtained a position with another state agency "had she made *any* effort." In a back pay dispute, the burden is on the defendant to prove that the plaintiff did not use reasonable diligence to obtain comparable work. *See Weaver v. Casa Gallardo,* 922 F.2d 1515, 1527 (11th Cir.1991). In addition, we hold that the mitigation requirement does not apply to a Title VII plaintiff where the defendant's discriminatory conduct resulted in the disability that prevents the plaintiff from finding other employment. *See Maturo v. National Graphics, Inc.,* 722 F.Supp. 916, 925 (D.Conn.1989) (finding Title VII plaintiff is not required to mitigate damages where the employer caused her disability).

D.     Costs

Lastly, DCYS argues that the district court abused its discretion when it awarded Lathem costs because 42 U.S.C. § 2000e-5(k) precludes Lathem from recovering taxable costs under Federal Rule of Civil Procedure 54(d). The Local Rules of the Northern District of Georgia require that the party requesting rule 54(d) costs file the bill of cost within 30 days after entry of judgment, which Lathem failed to do. *See* Loc.R. 54.1, N.D.Ga. The district court, however, noted correctly that the plain language of section 2000e-5(k) does not distinguish between taxable and non-taxable costs; if Congress wanted to limit Title VII plaintiffs' recovery to non-taxable costs, it could have done so.[6] Further, Lathem's failure to file a bill of costs did not prejudice DCYS because Lathem's relatively small cost request did not unexpectedly expose DCYS to a great increase in liability. In addition, the late submission of the bill did not affect DCYS's decision to appeal the verdict; DCYS filed a notice of appeal before Lathem submitted her cost request.

DCYS also argues that Lathem did not offer sufficient evidence to support her assertion that the costs were necessary to the prosecution of the action. Plaintiffs can recover reasonable costs in civil rights cases.

---

[6]Section 2000e-5(k) reads, in pertinent part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs...."

*See Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1190 (11th Cir.1983).  The district court reviewed thoroughly the cost itemization, removed one questionable item and reduced another.  We defer to its sound judgment on whether Lathem's costs were reasonable.

## V. CONCLUSION

Based on the foregoing, we hold that the district court did not abuse its discretion when making its evidentiary determinations, Lathem presented ample evidence to support her disparate treatment claim, and the district court correctly awarded Lathem back pay and costs.

AFFIRMED.

BIRCH, Circuit Judge, concurring:

I concur, *dubitante*.